John A. HOOT and T. L. Hoot, d/b/a
H. & H. Concrete Construc-
tion Company,

v.

QUALITY READY–MIX COMPANY, Inc.

No. 356.

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 13, 1969.

Rehearing Denied March 13, 1969.

**422**

Sorrell, Anderson & Porter, Charles R. Porter, Jr., Corpus Christi, for appellants.

Darrell G. Lochte, Kerrville, Cohn & Morris, Pat Morris, Corpus Christi, for appellee.

OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after non-jury trial that appellee, Quality Ready-Mix Company, Inc., recover from appellants, John A. Hoot and T. L. Hoot d/b/a H. & H. Construction Company, the sum of $12,104.75, with interest at the rate of 6% per annum from January 1, 1966, and the amount of $2,100.00 as attorneys' fees. The trial court filed findings of fact and conclusions of law, and refused to make other findings and conclusions requested by appellants.

The suit was filed by appellee based upon a sworn account for goods, wares and merchandise, consisting principally of sand and gravel aggregates allegedly sold and delivered to appellants. The balance claimed by appellee was $12,104.75, resulting from alleged sales of $32,511.23 less credits of $20,406.48. An itemized account of appellee's claim was attached to appellee's original and amended petition. Appellants filed a verified answer in which they asserted that the account relied upon by appellee was incorrect, not just and true, and was excessive to the extent of $3,344.68. Appellants conceded that the charges made by appellee per cubic yard of sand and gravel actually delivered to them were correct but alleged that the quantity delivered was less than that claimed by appellee. The prices for numbers 1 and 2 gravel aggregate was $3.50 per cubic yard and for sand was $3.85 per cubic yard.

The findings of fact and conclusions of law made by the trial court are as follows:

"FINDINGS OF FACT

"NO. 1. Between the first day of May, 1965, and the 9th day of September, 1965, plaintiff delivered to defendants sand and gravel in the aggregate amount of $32,448.35.

NO. 2. During the above period, plaintiff delivered to defendants ready-mix concrete and earth fill in the aggregate amount of $62.88.

NO. 3. All of the foregoing items were delivered by plaintiff at the special instance and request of defendants.

NO. 4. All of such items were reasonably worth the amounts charged therefor.

NO. 5. Defendants purchased 1,300 yards of sand from Capitol Aggregates; and plaintiff agreed to give to defendants credit of $1.00 per yard for each yard of sand so purchased from Capitol Aggregates.

NO. 6. During the course of the dealings between plaintiff and defendants, defendants became entitled to and were given credit for the following:

(a) Sand and gravel returned $2,549.05

(b) Credit on sand, in accord with finding No. 5, above 1,300.00

(c) Credit by payments on account 16,557.43

for a total credit of $20,406.48

and being all of the offsets and credits to which said account is entitled.

NO. 7. On the date of the filing of this suit and on the date of judgment there was due and unpaid on said account and owing to plaintiff by defendants a balance of $12,104.75.

NO. 8. Plaintiff gave defendants notice of such unpaid balance and made demand for the payment of the same more than thirty days before the filing of this suit.

NO. 9. The sum of $2,100.00 is a reasonable amount for plaintiff's attorney's fees.

## CONCLUSIONS OF LAW

NO. 1. Defendants became legally obligated to pay to plaintiff the balance of the total account, that is, $12,104.75 on demand.

NO. 2. Defendants did not make a legally sufficient tender of the amount due on such account.

NO. 3. Plaintiff's claim is one for which plaintiff may recover attorney's fees under the provisions of Article 2226, V.A.T.S."

Appellants assert thirteen points of error. Appellants' principal contention is that appellee did not deliver the quantity of sand and gravel aggregates as claimed in its petition and as found by the trial court; that there is no evidence to support the findings of the trial court as to quantity and amount owed (points 1, 3, 5, 13), or that such findings are against the overwhelming weight and preponderance of the evidence so as to be clearly wrong (points 2, 4 & 13); and that the trial court erred in refusing to make appellants' requested findings numbers 8, 9, and 10 to the effect that appellants owed appellee only the sum of $8502.57 (point 10). Appellants' remaining points relate to the questions of tender by them (point 6), attorneys' fees allowed to appellee (points 7 and 8), interest (point 9), testimony of appellee's witness Holmes (point 11), and failure to grant appellants' motion for judgment at the conclusion of appellee's main case (point 12).

We will first consider appellants' primary contention that appellee did not deliver the quantity of aggregate, sand and gravel for which it was allowed a recovery. In view of appellants' claim that the evidence is factually as well as legally insufficient to support the findings of the trial court, we have read and considered all of the evidence in the case.

The controversy herein arose out of transactions occurring during the spring

and summer of 1965 when appellants were subcontractors for the paving of a runway at Laughlin Air Force Base at Del Rio, Texas. FOWCO Construction Company was the general contractor on the job which was under the supervision of the U.S. Corps of Engineers. The sand and gravel aggregates were principally supplied to appellants by appellee. Some sand was furnished by Capitol Aggregates, another company.

On the trial of the case six witnesses testified and a number of exhibits were admitted into evidence. Appellee-plaintiff called the following witnesses: John A. Hoot, one of the appellants (as an adverse witness); H. E. Eaglebarger, Jr., manager of appellee's plant at Del Rio, Texas; and Charles Holmes, an engineer, president of Holmes-Skeller Engineers of Fredericksburg, Texas. Appellants-defendants called the following witnesses: John A. Hoot; Jack E. Collier, a certified public accountant of Corpus Christi, Texas; William B. Ogletree, a self-employed consulting engineer of Corpus Christi, Texas; and Mack D. Ham, also of Corpus Christi, Texas, who worked as a job superintendent for FOWCO Construction Company on the Laughlin Air Force Base project for which the materials here involved were furnished.

John A. Hoot, one of appellants, testified first when called as an adverse witness by appellee, and later as a witness called by appellants. When called as an adverse witness, he testified in substance as follows: He ordered the materials used on the Laughlin Air Force Base project from appellee. He stated that he had not used the amount of material which appellee claimed to have sold and delivered; that he wanted to pay for the gravel on the basis of what was weighed through the batching machine at the job-site. Hoot further said that he had no complaint about any particular entry of appellee's account but his only complaint was that "overall" he did not get the amount of material claimed. Hoot further testified that the material delivered by appellee to

the job-site at Laughlin Air Force Base was unloaded and stock-piled. Thereafter it was placed in a batching plant. A batch design had been set up and the materials were to be furnished and mixed in accordance with it. The materials were weighed on scales at the batching plant and a scroll indicated the amount of each material present by weight. The material was then loaded on trucks at the batching plant and cement was added, which was measured on a separate scale. The design for each batch in this case was for 37.4 cubic feet of concrete. Hoot said this would require 1377 pounds of sand, 1527 pounds of No. 1 aggregate and 1853 pounds of No. 2 aggregate. Appellants were paid on the basis of the scroll count on the batching plant. After a truck left the batching plant the load was carried to the paving machine at the location where the paving was being laid, and dumped into said machine. There was a batch meter on the paving machine, but Hoot did not use the results shown by it in making his calculations. However, he said 240 yards of material were wasted. Hoot testified on the basis of the scroll count of the batching plant he calculated that appellants had used 3237 yards of No. 2 aggregate and appellee claimed it had sold appellants 3506 yards, a difference of 269 yards; that appellants had used 2642 yards of No. 1 aggregate and appellee claimed it had sold 3307 yards, a difference of 665 yards; that appellants had used 1498 yards of sand and appellee claimed it had sold 1514 yards, a difference of 16 yards. It thus appears that Hoot's testimony in substance was that appellants had not used about 950 yards of the combined aggregates which appellants claimed it had sold and delivered. When recalled as a witness for appellants, Mr. John Hoot testified in part concerning the daily paving reports which were kept on the job by the U. S. Corp of Engineers and payments in the amount of $16,557.43 made by appellants to appellee in part payment of its account.

H. E. Eaglebarger, Jr., testified in substance as follows: He is manager of ap-

pellee's plant at Del Rio, Texas. He described the aggregates furnished and the equipment used in connection with production of same. A systematic record of materials furnished to appellants on the Laughlin Air Force Base project was kept, of deliveries, returns and payments. Three different gradations of aggregate were furnished, a large gravel, a small gravel and a sand. The records concerning same were kept in the regular course of business under his supervision and he caused an account to be made from delivery tickets. Each time a truck left appellee's plant loaded with material it carried a delivery ticket. When there was no one at the Air Base to sign them, the tickets were allowed to accumulate and signed thereafter by someone on behalf of appellants. The delivery tickets were made out in duplicate, appellee kept one copy and the other was retained by the person signing for the material. Appellee's account (Plaintiffs Exhibit 1) showed delivery of materials from May 1, 1965 to September 9, 1965, and consists of 28 pages showing the date, quantity and price of sand and gravel delivered, credits for materials returned and payments made, and a summary of debits and credits and balance owing, the latter amount being $12,104.75. Mr. Eaglebarger identified the said account and exhibit; testified that it was true and accurate; that it reflected all offsets and credits to which appellants were entitled; that the prices shown, in addition to being agreed to, were the prevailing prices in the area and were the market value of the materials shown htereon. When the account was offered into evidence, counsel for appellants conducted a voir dire examination of the witness and upon its conclusion expressly stated there was no objection to the account; whereupon, it was admitted into evidence. Mr. Eaglebarger further testified in substance that the method of determining the amount or volume of cubic yards of material delivered by appellee was by knowing the size of the truck being loaded. Four trucks were used, designed to carry 18, 12, 6 and 5 yards respectively.

The material was hauled about 10 miles from appellee's plant to the job-site, a portion of the route being through the City of Del Rio, Texas. Eaglebarger said that when trucks were loaded, an employee struck off the load with a shovel, not completely level, and leaving a small percentage of excess of the measured capacity at sideboard level of the truck. Eaglebarger further testified that during the course of the project, 351 yards of gravel and 343 yards of sand were returned (a total of 694 yards) from the job-site to appellee's plant, because of failure to meet specifications, and appellants' account was credited for the price of same. On cross-examination, Mr. Eaglebarger testified that when the rejected material was re-loaded in the trucks to be returned to appellee's plant it was not measured. Appellee arranged with appellants to use their equipment at the job-site for such re-loading. The load was not struck off level but was heaped or mounded up, because an extra man would have been required on the job if the loads had been struck off. Eaglebarger said that the trucks so re-loaded would appear to a casual observer to be over full, but such was not the case because the material did not reach into all extremeties of the trailers or dump, that is not completely to the corners or sideboards. A pad and pen furnished for each truck were used by the driver to mark the number of loads returned, and appellants were given credit for the same.

Appellee's witness, Charles Holmes, testified in part substantially as follows: He is an engineer, president of Holmes-Skeller Engineers, Fredericksburg, Texas, and does consulting engineering work. Prior to that employment he served with the Texas Highway Department for 34 years in capacities from inspector to assistant district engineer. He also had been employed by a bridge company and the Arkansas Highway Department for about two years, some of which time was spent on concrete paving research. He had experience in purchasing raw aggregate for paving work substantially all over the State of Texas, including the Del Rio area. He

said that the usual and customary way of measuring concrete aggregates, as between seller and purchaser, is in trucks at point of delivery, and this is a purchase by the yard by volume (as distinguished from by weight). He had training and experience in calculating the amount of aggregate that might go into various concrete mixes and was still doing that kind of work. He was present in court when Mr. Hoot testified as to the formula or batch mixture used at the Laughlin Air Force Base job, and based upon the particular mixture so testified to had made a calculation or estimate of the number of yards of raw material required to make the number of yards of laid concrete on the job. Mr. Holmes gave his opinion that for the quantity of laid concrete on the job, that is 6608 yards, the total requirement of combined aggregate would be close to 9450 yards. That figure included a percentage allowance for waste so that the amount of aggregates actually used would be about 7% less than the total furnished. The witness made a calculation, while being cross-examined, that the actual aggregates used, excluding waste, on the job was 8918 yards. Mr. Holmes was rigorously cross-examined concerning his opinions and the basis thereof. He did not have actual knowledge of the transactions in question, and ultimately his testimony amounted to an expert opinion concerning the quantity of material required to pour the amount of concrete laid on the job in question. His opinions supported appellee's claim that the quantity of aggregates claimed in its petition and account were delivered to the appellants at the job-site involved, particularly when waste of materials was considered.

The testimony of appellants' witness Jack E. Collier was in part substantially as follows: He is a certified public accountant, holding a B. A. degree in accounting from the University of Texas, and has practiced his profession about thirty years. He examined the scrolls kept in connection with the batching plant on the Laughlin Air Force Base job on December 5, 6, and 7,

1966. The scrolls were produced in Court at the time the witness testified. He counted the number of peaks on the scrolls, which indicated the number of batches produced, and they totalled 4933. He felt that there were three additional batches, making a total of 4936. He tabulated the gross amount, the wasted batches and the net amount. He said there were 72 batches wasted at the batching plant. He also examined defendant's Exhibit 3, the daily paving reports, and the amounts shown thereon tallied with his count from the scrolls except for three batches, as above-mentioned.

Appellants' witness William B. Ogletree testified in part substantially as follows: He is a licensed engineer, holding a degree of Bachelor of Science in architectural engineering. He had 12 years experience as a practicing engineer, eight of which were as a consulting engineer. He had experience in concrete design, batch design, building design or structural design with concrete, mass concrete structures, bulk heads, streets, sea walls, and the general heavy construction employment of concrete as building material. He testified he was proficient in calculating batch designs and the amount of materials used in concrete. He used the information shown on defendants' Exhibit 3, the daily paving reports, in giving his testimony. He said there was a total used batch volume of 6,660 cubic yards, which was 52 yards more than the figure of 6608 shown by said records, and that the difference could be accounted for because of samples used for testing. He further gave his opinion that considering various factors involved the total amount of combined aggregate (for the 6608 cubic yards of concrete actually laid) used on the job was 8,605 cubic yards, made up of 2590 cubic yards of sand, 2760 cubic yards of No. 1 aggregate and 3255 cubic yards of No. 2 aggregate. Mr. Ogletree's calculations included wasted batches but he did not state the quantity of same. He reached a conclusion as to the amount of money at the agreed prices represented by

these quantities, which was $26,060.00. On cross-examination, Mr. Ogletree testified among other things that there was a bulking ratio involved of 1.27 for the aggregates alone (without considering cement and water), that is, 1.27 yards of sand and gravels were required for a cubic yard of finished concrete; that he used a "pound" or weight measurement in reaching the number of yards calculated, and that a volume measurement would be as much as 3% greater; that he did not consider the amount of materials left on the job nor had he calculated any stockpile, hauling or intrinsic waste; that he did not work the formula testified to by him on same basis that Mr. Holmes did.

Appellee's witness Mack D. Ham testified in part as follows: He was a job superintendent for FOWCO Construction Co. on the Laughlin Air Force Base project here involved. He first said that he had made a log for a period of time concerning trouble experienced on the job; that he made entries therein concerning the hauling of aggregate into or off of the base. He said that he recalled that on one occasion an entire pile of aggregate was condemned and required hauled off the base, and that he made a record of same. He estimated the quantity of large rock at about one thousand cubic yards and the small rock at about 300 to 400 cubic yards. He said that he was present part of the time when the aggregate was hauled off the site; that appellee loaded the same with its own high lift and trucks; that the material was heaped on, as opposed to being leveled off; that the material hauled in to the jobsite by appellee was struck level; that on several occasions he saw some gravel on the streets from the trucks going out of the base; that the base commander made a complaint about gravel on the street. On cross-examination, Mr. Ham conceded that he did not write in the log or book the estimates he had testified to. On re-direct examination he said that he did not continue to keep a diary until the end of the job, but stopped when the trouble

stopped on July 15th (apparently of the year 1965).

The parties have devoted a considerable portion of their briefs to the evidence concerning the total amount of materials used in laying the 6608 cubic yards of concrete runway at the Laughlin Air Force Base. One calculation made by appellee is based upon the testimony of appellants' witnesses Hoot, Collier and Ogletree and reflects that total aggregate used and wasted amounted to 8,880.35 cubic yards; and that when the amounts estimated left on the job and admittedly wasted in the stockpile are considered, an additional amount of 340 yards can be added, so that 9,220.25 yards of material can be accounted for with reasonable certainty. Subtracting from that amount, 1100 cubic yards of sand appellants purchased from Capitol Aggregates (1300 less 200 estimated left on hand), appellee's calculation shows that it furnished at least 8,120.35 yards of materials. The latter figure does not make allowance for waste except that specifically admitted by the witness Hoot. There was evidence by the witness Hoot that material stockpiled on the ground for several months was subject to wastage by wind and rain. Appellee's witness Holmes testified that waste could not be wholly prevented and he calculated a waste factor of 3% for sand, 5% for small gravel and 8% for large gravel. There was evidence also on appellants' Exhibit No. 3 that on occasions the scroll counts were "unrealistic" or "unreliable". When such factors are considered, appellee's calculation shows that the total amount of material claimed delivered by it—8391 cubic yards of combined aggregates—can be satisfactorily accounted for, and was actually delivered by appellee to appellants, as shown by its verified account.

The trial judge was authorized to accept appellee's view of the case and to conclude that appellee delivered the quantity of material claimed by it, and was entitled to recover the balance claimed in the amount of $12,104.75. In the final analysis,

appellants' complaints are directed principally to credibility of the witnesses and the weight to be given to the testimony. It is within the province of the fact-finder, in this case the judge, to resolve such matters of credibility and weight. In this instance the conflicts presented were resolved in favor of appellee. On the record presented we cannot say that the evidence is legally or factually insufficient to support the findings of the trial court, and we are not authorized to substitute our judgment for that of the lower court. C. H. Leavell & Co. v. Vilbig Bros., Inc., 160 Tex. 600, 335 S.W.2d 211 (1960).

■ In the face of appellants' verified denial, appellee concedes that it had the burden of proving up its claim by independent evidence, and particularly to establish the quantity of aggregates claimed delivered to appellants. See Texan Man's Shop, Inc. v. Nunn-Bush Shoe Company, 401 S.W.2d 716 (Tex.Civ.App., Corpus Christi, 1966, n. w. h.); California Chemical Company v. Sasser, 423 S.W.2d 347 (Tex.Civ.App., Corpus Christi, 1967, n. w. h.). The trial court was authorized to find that appellee made out a prima-facie case based upon the testimony of the witness Eaglebarger coupled with appellee's account, which was admitted into evidence without objection. See McLain v. Sitton, 374 S.W.2d 945, 947 (Tex.Civ.App., Beaumont, 1964, n. w. h.); Pridgen v. Hill, 12 Tex. 374 (1854). The trial court was also authorized to give weight to the opinions expressed by the witness Holmes and to conclude that some of the testimony given by appellant Hoot and the witness Ogletree supported appellee's contention as to the quantity of aggregates delivered to appellants. Appellants' points 1, 2, 3, 4, 5, 10, 11, 12, and 13 are overruled.

■ Appellants' sixth point of error asserts that the trial court erred in holding as a matter of law that they did not make a legally sufficient tender of a sum of money in excess of the amount owed. The evidence shows that on September 30, 1965,

appellants forwarded a check to appellee in the amount of $7,032.57 as payment in full of appellee's account. The letter accompanying that check reflected that such amount was for purchases of 3100 cubic yards of small aggregate, 2600 cubic yards of large aggregate, amounting to 5700 cubic yards of aggregate at $3.50 per cubic yard, and 1300 cubic yards of sand at $3.80 per cubic yard. On such basis the total aggregates for which appellants tendered payment was 7000 cubic yards, amounting to $24,890.00. From said amount was subtracted $16,557.43 representing prior payments, and $1,300.00 representing a credit of $1.00 per cubic yard on sand purchased from Capitol Aggregates, in accordance with the agreement of the parties. Appellee returned the tendered check in the amount of $7,032.57 to appellants. After appellee filed suit, appellants by their pleadings constructively tendered into court the amount of $8,760.07 as full payment of appellee's account and claim. While on the witness stand Mr. John A. Hoot again offered to pay the last-mentioned amount. In their original brief herein appellants contended that they owed only for 7305 cubic yards of combined aggregates they say was actually delivered in the amount of $8,502.57, or less than the amount tendered by their pleadings. However, in their reply brief appellants concede that the calculations made in their original brief did not take into consideration the number of yards of aggregate left on job-site; that Mr. John A. Hoot estimated that approximately 240 yards of material were left there, and appellants are willing to be bound thereby and to such extent; that on such basis the amount of $652.50 would be owed over and above the $8,760.07 tendered by appellants, which would increase the amount admittedly owed to the sum of $9,412.57. In this situation we believe that the tender made by appellants was legally insufficient and the conclusion and holding of the trial court to such effect was and is correct. Since the tender by appellants was not for the full amount owed, it did not prevent the accrual of

attorneys' fees and interest. See Barreda v. Merchants National Bank, 206 S.W. 726 (Tex.Civ.App., San Antonio, 1918, n. w. h.). Appellants' point six is overruled.

By their seventh and eighth points appellants contend that the trial court erred in awarding attorneys' fees to appellee and in any event the amount is excessive. Those contentions will be considered along with appellee's cross-point that the amount awarded for attorneys' fees is insufficient and should be increased. We overrule both of these contentions. In the absence of a legally sufficient tender, appellee was entitled to recover a reasonable amount as attorneys' fees under article 2226, Vernon's Ann.Civ.St. It is within the province of the trier of the facts to determine the reasonable value of an attorney's services. See Gulf Paving Co. v. Lofstedt, 144 Tex. 17, 188 S.W.2d 155, 160, 161 (1945); Great American Reserve Insurance Co. v. Britton, 406 S.W.2d 901, 907 (Tex.Sup.Ct., 1966); Page v. Superior Stone Products, Inc., 412 S.W.2d 660 (Tex.Civ.App., Austin, 1967, wr.ref. n. r. e.), and cases therein cited. The evidence was legally and factually sufficient to support finding of fact No. 9— that $2,100.00 is a reasonable amount for appellee's attorneys' fees—and on the record before us we are not authorized to hold that such award is either excessive or insufficient. Appellants' seventh and eighth points and appellee's cross-point are overruled.

Appellants' ninth point of error asserts that the trial court erred in awarding interest on the sum of $12,104.75 from January 1, 1966. Appellants argue in substance that the failure of the trial court to include in its findings and conclusions that appellee's suit was upon an open account which authorizes a recovery of interest under Art. 5070, V.A.C.S., negatives such matters and that there is no sufficient basis for the judgment awarding interest. The record reflects that appellants' original answer conceded that appellee's claim was on an "open account". The issue was not disputed in the evidence and there was no specific request for a finding thereon. A trial judge is not required to make findings of fact on issues which are admitted or undisputed. See Smith v. Brown Express, 343 S.W.2d 550 (Tex.Civ. App., San Antonio, 1961, wr.ref. n. r. e.); Donalson v. Horton, 256 S.W.2d 693 (Tex. Civ.App., Amarillo, 1952, n. w. h.). The judgment properly awarded interest on the amount of appellee's recovery on an open account from January 1, 1966, under the provisions of Art. 5070, V.A.C.S. Appellants' ninth point is overruled.

The judgment of the trial court is affirmed.