David E. MAY, Appellant,

v.

**WILCOX FURNITURE DOWNTOWN, INC., et al., Appellees.**

No. 425.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 26, 1969.

Rehearing Denied Jan. 29, 1970.

———◆———

Branscomb, Gary, Thomasson & Hall, Gary Norton, Corpus Christi, for appellant.

Boone, Davis, Cox & Hale, G. Cole Thomson, Corpus Christi, for appellees.

NYE, Justice.

## OPINION

This is a suit for specific performance based upon a contract under which three corporations have exercised their option to re-purchase the shares of stock owned by a former director and stockholder. It was undisputed that the corporations had the right to re-purchase the stock and that the former stockholder was willing to transfer the stock back to the corporations. However, a dispute arose concerning the value of the stock. The case was submitted to a jury on thirty-four special issues, the effect of which was to acquit all parties of any wrongdoing. Thereupon, the court entered judgment based upon the original contract agreement utilizing a court ordered audit which determined the value of the stock. It is from this judgment that the defendant has perfected his appeal.

The plaintiffs were three Texas Corporations, Wilcox Furniture Downtown, Inc., Wilcox Furniture, Inc. of Kingsville, and Wilcox Real Estate, Inc. of Kingsville. These corporations will be referred to hereinafter as they were in the trial court: plaintiffs or companies. At the time of the formation of these new companies, May became a stockholder, director and officer in each new company. At various times the Board of Directors of each of the companies passed certain by-laws.

One of such by-laws contained the agreement now under consideration. Since all of these agreements in all three companies are identical, the by-law agreement will be hereafter referred to as the "agreement" or "contract". This particular agreement was the result of an amendment to the by-laws passed at a special meeting of the Board of Directors on October 9, 1962.

The law of contract interpretation requires us to read and consider the entire instrument in order to determine the true intent of the parties. 13 Tex.Jur.2d, Contracts § 113, pp. 269–273. It is necessary, therefore, that we copy this amendment to the by-laws in its entirety.

" * * * No shareholder shall dispose of ('meaning to sell, offer for sale, mortgage, encumber, give away or otherwise attempt to affect the title to') the shares owned by him or her to the public, or to any person, until the shares to be sold have first been offered to this corporation. (Article 4, Section C). Paragraph 2, ammended as follows: Any shareholder desiring to dispose of any of the shares in this corporation owned by him or her shall give written notice by registered or certified mail to the President of this corporation of his desire to do so stating therein the number of shares he proposes to dispose of. *The price to be paid to the shareholder by the corporation shall be 80% of the book value as determined by the last*

*annual audit.* One fourth or more of this value shall be paid within thirty days. The corporation shall then issue a promisory note with 5% simple interest covering the remaining amount due. Payments to the shareholder shall be paid yearly, or before, with one third of the amount of the promisory note being due on or before twelve months from the initial stock refund payment and remaining one third payments due yearly thereafter. Compounded interest shall be paid annually at the same time as note payments are paid. (Article 4, Section C). Paragraph 3 shall be removed and new Paragraph 3 shall read as follows: *Any stockholder who dies or leaves the employment of said corporation without being immediately employed by any affiliated Wilcox corporation and leaves any affiliated Wilcox corporation, whether voluntary or not, shall offer his or her stock to the corporation in its entirety.* The exact procedure to be followed is as outlined under Paragraph 2, Section C, Article 4 of the by-laws. The amount to be paid and the manner in which payment is to be made, is as outlined in the by-laws of the corporation, under Article 4, Section C, Paragraph 2. Article 4, Section C, Paragraph 4, shall be removed with substituting paragraph to read as follows: Notwithstanding anything to the contrary in Article 4, any person leaving the employ of this corporation without being immediately reemployed by any affiliated Wilcox corporation and leaves the employment of any affiliated Wilcox corporation at any time within two years of the founding of this corporation shall surrender their shares of stock as outlined in sentence #1 Paragraph 2. (Article 4, Section C) *The amount paid for said stock shall be the original purchase price.* One forth of said value to be paid within the thirty days of surrender date and the balance due shall be paid in yearly installments of ¼ each. Said installments due on or be-

fore one year from each preceding payment date. At the time of surrender of said stock, a noninterest bearing note shall be issued for the value of said stock in exchange for the stock certificates. * * *" (Emphasis and parentheses supplied.)

On or about August 12, 1965 May's employment was terminated in all three companies. At this time May owned 650 shares of stock of the Wilcox Furniture Downtown, Inc., 650 shares of stock of the Wilcox Furniture, Inc. of Kingsville, and 34 shares of stock of the Wilcox Real Estate Inc. of Kingsville. No question as to the value of the stock of Wilcox Real Estate, Inc. of Kingsville is raised by the appellant on this appeal.

The stock of the companies is closely held and because of the contract agreement in the by-laws which restricts the sale of the stock, the stock of the companies has no readily determinable market value.

A few weeks after May's employment had been terminated, the companies on September 20, 1965, made demand upon May to surrender his stock. At the same time they offered to pay to the defendant a sum equal to 80% of what the companies considered the book value of the stock in question to be. May offered his stock to the companies in its entirety but he refused to accept the amount offered to him by the companies. He contended that the amount offered to him, representing the companies' idea of book value, did not take into account the profits from long term installment sales made to customers.

The companies employed Mr. Ernest Johnson, a Certified Public Accountant to do the accounting work for the three companies. The only accounting work of any kind performed for the companies was done by Mr. Johnson. Each year he prepared the financial statements for each company. Accompanying each financial statement the accountant would attach to the financial sheets an explanation that the company used "the installment method

of accounting for income tax and accounting purposes." He made another notation at the end of the financial statement that it was "not verified by audit." When the defendant's employment terminated and he offered his stock to the companies, they offered to pay him the book value based on the last annual financial statement of this company accountant. This last statement was dated May 31, 1965.

The defendant contended in the trial court that this last annual financial statement prepared by Ernest Johnson was not the "last annual audit". The plaintiffs argued on the other hand that based upon this last financial statement, the book value of defendant May's stock was ascertainable, and that this was what the agreement meant. May contends here that the companies' system of accounting is not correct, and that had the companies used the "accrual" method of accounting, the fair and true book value of his stock could be ascertained.

The dispute actually boils down to the treatment of that portion of the unpaid sales price of goods sold on an installment basis. By the companies' use of "the installment method of accounting", the unrealized profit from installment sales is carried on the books of the companies in an account called "installment revenue deferred". Under the installment method, the company recognizes the gross profit only as it is collected. This method of accounting was specifically authorized by the Internal Revenue Code for purposes of computing taxable income. The installment method of accounting permits the Federal income tax on the sales of the merchandise to be deferred until the year in which the actual cash is received from the installment. Although the cost of the actual sales of the merchandise is taken in the year in which the sales are made, the income from such sales is deferred until the money is actually received.

The accrual method of accounting permits the recognition of the gross profit of the merchandise at the time the sale is completed. Using this method, the financial statement would reflect an increase in the amount of gross profit otherwise previously deferred. As a result of the use of the accrual method of accounting, the capital account is greater, reflecting an increase in the book value of the stock.

It was undisputed that the plaintiff companies employed the installment method of recognizing gross profit on its installment sale of merchandise for both tax purposes and financial purposes. However, the basic point of controversy between the parties is how the installment revenue deferred account would be handled in computing book value under the agreement.

The agreement provided that the price to be paid to the shareholder for his stock would be "80% of the book value as determined by the last annual audit". Had an annual audit been prepared by the companies' accountant, prior to the termination of May's employment, we believe that May would have been bound by that audit under the agreement. The jury found in effect that the parties had no oral or special agreement between themselves, that the books of the companies would be kept using any special method of accounting. The agreement was silent on a method of accounting to be employed. May contended in the trial court that he was entitled to an audit of the companies' books for the fiscal year ending May 31, 1965. He reasoned that since the parties had entered into an agreement to buy and sell the stock at book value as determined by the "last annual audit", he was entitled to have the court appoint a certified public accountant to audit the books and accounts of the companies to assure that all funds, inventory and other property were properly accounted for. He argued in his petition that he was entitled to an audit in order to determine the exact book value of the stock in each of the companies. His petition stated that defendant " * * * David E. May asks for only the amount

of money to which he is entitled under the agreement among the stockholders; he has tendered all of his shares of stock in each of the Wilcox Corporations as provided in the agreement and as demanded by the Wilcox Corporations with the simple request that he be paid 80% of the book value of his stock as provided in the agreement; *and David E. May will accept whatever amount a proper audit and accounting shall determine to be 80% of the book value of the stock .which he has tendered."* (Emphasis supplied.) Appellant's position was that the rights of the parties under the agreement should be determined by an auditor upon accounting principles rather than by the court as a matter of law. The trial court then, in accordance with Rule 172, Texas Rules of Civil Procedure appointed Wm. H. Shireman, Jr., Certified Public Accountant, to certify, reconcile and adjust the books of accounting of the three companies "in accordance with established and accepted accounting principles and practices and based upon such adjusted book accounts, to determine the book value of the shares of stock in the name of David E. May in each of said corporations in *accordance with established and accepted accounting principles and practices.* \* \* \*" (Emphasis supplied.)

The court-appointed auditor made an audit of the books of the companies. He reported to the court that he had examined the balance sheets, the related statements of income and retained earnings of the various corporations as of May 31, 1965; that the examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of the accounting records and such auditing procedures as he considered necessary; and that based upon *generally accepted accounting principles* he rendered the attached financial statement which showed the book value of defendant May's stock in each company. Mr Shireman's report on the companies turned out to be exactly the same as Ernest Johnson's financial statement with respect to the capital accounts and his computations as to book value produced identical amounts.

After this report was made, May completely changed his position and asserted that the book value of his shares of stock should be determined in a different manner. He argued that the court should require the auditor to make a supplemental report with instructions to prepare another financial statement and audit. He suggested that the supplemental report should be prepared in an alternate form and be based upon the assumption of the following facts: (1) That the companies used the accrual method of accounting for financial purposes; and (2) that installment revenue deferred is not a liability to be subtracted from assets in computing stockholders' equity and book value of the companies. The court ordered the auditor to make this supplemental report as requested. The costs of these audits were over $3000.00.

The accountant reported back to the court that the companies had consistently employed the "installment method" of recognizing gross profit on installment sales merchandise, both for financial purposes and income tax purposes; and that this was an acceptable method of computing income for financial purposes even though it may not have been the preferred method. However, following the court's instructions the accountant prepared an alternate financial statement, assuming that the companies used the accrual method of accounting instead of the installment method. Appellant May argues most forcefully here, that this second alternate audit is the most reasonable, equitable and logical method. He asserts that the book value of his stock should be based on this alternate report to produce the actual value of the stock. Appellant May contends the trial erred in entering judgment based on the first audit instead of the second.

Once a party has petitioned the court and has prevailed upon the court to rule in his favor he cannot thereafter be permitted to take a contrary stand. If a

party can recover at all it is on pleadings defining the issue to be tried. It is also a general rule that an admission in a pleading, on which a party goes to trial is taken against him. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238 (1942). Since May petitioned for an audit to verify the financial statement of the companies and since such audit was prepared in accordance with established and accepted accounting principles and practices, and May agreed to accept whatever amount a proper audit would determine the book value of the stock, he is judicially estopped to take a different position than one originally adopted. 22 Tex.Jur.2d, Estoppel, § 17, p. 685 and authorities therein cited. The accountant used the same accounting procedures as were used by the companies themselves for both accounting and financial purposes. We hold that May was entitled to an audit but once the expensive audit was conducted, justice would demand that he be bound by the results thereof.

■ The judgment based upon the first requested audit is correct for other reasons. The by-laws provided that the book value was to be determined by the "last annual audit". The term "last" would necessarily be the most current audit previously prepared by the company. The word "annual" means being performed on a yearly basis; and "audit" is a formal or official examination and verification of the books of account by an auditor. The books of the companies were kept in a certain definite manner consistent with generally accepted accounting principles. Since the audit ordered by the court used the principles of accounting employed by the corporation itself, it verified by examination the books of account of the corporation. We hold that this audit determined the book value of the defendant's stock in accordance with the agreement of the parties. The corporation's last annual financial statement when audited by the court appointed auditor, was the "last annual audit". The jury did not find any

facts that would call for any specific or implied agreement that the books would be kept in any other manner. There were no other findings of the jury inconsistent from the facts fully developed that would be contrary to the trial court's judgment.

The by-laws of the corporation approved by the defendant, evidenced a purchase and sale of the stock of this closed corporation at a price other than the actual value. Within the first two years of the founding of the corporations, the stockholder would be required to sell his stock at the original purchase price (i. e. $10.00 per share) regardless of the actual book value. The agreement provides for the mandatory sale of the stock at 20% less than the book value at any other time thereafter. The by-laws were amended to restrict the sale of the stock in many other ways. There was no provision for the stock to be sold at market value using the willing-buyer or the willing-seller test, nor was the stock to be appraised and sold on any other basis.

Because the financial statement prepared by Ernest Johnson was "not verified by audit", the defendant was entitled to have this last annual financial statement audited. Since no audit had been previously prepared, the trial court ordered one. It was based on the method used by the companies and upon generally accepted accounting principles. It found 80% of the book value as reflected in the trial court's judgment. Appellant's points 1 through 15 are overruled.

Appellant's points sixteen through twenty eight refer to the differences in allowances made for bad debts by the accountants in the two alternate reports; refusal to permit testimony relative to these accounts and to the second audit; complaint that certain special issues were not answered even though they were conditioned upon prior issues; the general complaint relative to the wording of certain special issues; and that other specific issues should have been submitted in the event that we hold that

the contract is ambiguous and not clear. All of these points have been considered by us and are overruled. We hold that the contract was not ambiguous. We have determined as a matter of law that the first audit requested, filed and received by the court correctly determined the last financial statement of the companies.

Appellant's point twenty nine complains of the trial court's refusal to submit certain special issues which appellant May contends were the ultimate issues of the case. The jury answered special issues based upon sufficient facts that neither of the parties had any specific or implied agreement at the time that they entered into the contract, *that the books of account would be kept in any particular way.* There was no issue of fact with respect to the book value based upon the last annual audit, as the court ordered audit confirmed the companies' accounting. This point is overruled.

Appellant in a number of points complains that the trial court erred in refusing to recognize that the interest on the money due and owing to May began to run from the date that May was entitled to receive the money. The trial court provided in his judgment that interest on David E. May's shares of stock should begin to run from the date of judgment. May's employment was terminated on August 15, 1965. On September 20, 1965 the appellee companies made demand upon defendant to surrender his stock and in response to such demand, May offered the stock to the companies. The by-laws provided that when any stockholder leaves the employment of the companies whether voluntary or not, he *shall* offer his stock to the companies in its entirety. The amount to be paid and the manner in which payment is to be made is as follows: "One fourth or more of this value (book value as determined by the last annual audit) *shall be paid* within ninety days (thirty days in the contract of Wilcox Furniture Downtown, Inc.). The corporation shall then issue a promissory note with 5% simple interest covering the remaining amount due. Pay-

ments to the shareholder shall be paid yearly, or before, with one third of the amount of the promissory note being due on or before twelve months from the initial stock refund payment and remaining one third payments due yearly thereafter. Compounded interest shall be paid annually at the same time as note payments are paid. * * *" (Emphasis and parentheses supplied.)

■ The value of May's stock is fixed and is based upon the last annual audit. The by-laws required the companies to pay the stockholder when the stockholder left the employment of the companies without being immediately employed. Therefore, May was entitled to receive the money upon the date of that event, and the interest began to run from that day. Since the value of May's stock was determinable and fixed as of that date, and could not go up or down thereafter, the companies should have legally tendered that amount of money (to May or into court) in order to stop the running of interest. Home Insurance Company v. Gutierrez, 409 S.W. 2d 450 (Tex.Civ.App.—Corpus Christi 1966); Hoot v. Quality Ready-Mix Company, 438 S.W.2d 421 (Tex.Civ.App.—Corpus Christi 1969); Dunn v. Ligon, 430 S.W.2d 704 (Tex.Civ.App.—Corpus Christi 1968).

■ The appellee companies contend that May never did surrender his stock and therefore they had no obligation to pay him. The transfer of the stock was controlled by the by-laws of the corporations. The physical handing over of the stock was but a ministerial function which neither affected adversely any other stockholder of the companies, the value of their stock, or any possible dividend that may have accumulated during this interim period of time. Since May's stock value was fixed as of May 31, 1965, the date of the last annual audit, he was entitled to his money on September 20, 1965, in accordance with the agreement in the by-laws.

The judgment of the trial court is reformed so as to reflect that 6% interest should be paid by the appellees on all amounts due and owing the appellant from September 20, 1965 and thereafter on all monies due from the notes in accordance with the by-laws. We suggest that both the appellant and appellees calculate as of the date of the entry of the judgment the correct amount due as outlined herein, and submit the same to this Court for its approval within fifteen days of the rendition of this opinion. See Transamerica Insurance Company v. Beseda, 443 S.W.2d 915 (Tex.Civ.App.—Corpus Christi 1969).

The costs on appeal will be assessed one half to the appellant and one half to the appellees. The judgment of the trial court in all other respects is affirmed.

Judgment of the trial court is affirmed in part and reformed in part.

SHARPE, Justice (concurring).

I concur in the result.