THE SOUTHERN UNDERWRITERS V. J. A. SCHOOLCRAFT.

No. 7756. Decided January 21, 1942.
Rehearing overruled February 18, 1942.
(158 S. W., 2d Series, 991.)

324

*Will R. Saunders* and *Henry D. Akin*, both of Dallas, and *Greenwood, Moody & Robertson*, of Austin, for plaintiff in error.

On the question of whether the total incapacity was permanent. Texas Indemnity Ins. Co. v. Thibodeaux, 106 S. W. (2d) 268; Traders & Gen. Ins. Co. v. Shanks, 83 S. W. (2d) 781; Southern Underwriters v. Wheeler, 123 S. W. (2d) 340.

On the question of whether the rate of $17.32 paid each week by the insurer was a "fair and just rate." Fidelity & Casualty Co. v. Branton, 70 S. W. (2d) 780; Texas Emp. Ins. Assn. v. Beckworth, 42 S. W. (2d) 827.

*McBroom & Clayton*, of El Paso, and *Joe E. Childers*, of Abilene, for defendant in error.

Mr. Judge HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a compensation case. Judgment was rendered in the trial court in favor of the claimant against the insurer in a lump sum upon findings of total and permanent incapacity and that judgment was affirmed by the Court of Civil Appeals. 139 S. W. (2d) 330.

The principal question for decision, in our view, is that relative to the manner of submitting special issues on the subject of the incapacity sustained by the claimant. Special issues 11 and 12, together with the instruments accompanying same and the answers thereto, were as follows:

"Question No. 11. Do you find from the evidence that such incapacity to labor, if any such there was, was total or partial? Answer by the use of the word 'total,' or by the use of the word, 'partial.'

"Answer by the use of the word, 'total,' if you so find from a preponderance of the evidence; but unless you so find from a preponderance of the evidence, answer by the use of the word, 'partial.'

"We answer: Total.

"Question No. 12. Do you find from the evidence that the incapacity to labor you have found in your answer to the preceding question, if you have found it necessary to answer same, was permanent or was it temporary. Answer by the use of the word 'permanent,' or by the use of the word, 'temporary.'

"If you find from a preponderance of the evidence that such incapacity was permanent, answer by the use of the word, 'permananent;' but unless you so find, answer by the use of the word, 'temporary.'

"We answer: Permanent."

■ To such special issues and the accompanying instructions the insurer timely filed written objections, the substance of which was as follows: First, that such issues were duplicitous and multifarious; second, that the instructions following same were on the weight of the evidence, assumed the existence of controverted facts, and amounted to an intimation from the court to the jury that the court thought that claimant was totally incapacitated. In connection with its objections to those special

issues and instructions the insurer requested the court to submit these special issues to the jury:

(a) "Do you find from a preponderance of the evidence that the Plaintiff in cross action, Schoolcraft, did not suffer partial incapacity as a result of his alleged injuries, if any, of December 17, 1937?"

(b) "Do you find from a preponderance of the evidence that the total incapacity, if any, suffered by Plaintiff in cross action, Schoolcraft, as a result of his injury, if any you have found of December 17, 1937, was not temporary."

We have concluded that the special issues and instructions were not subject to the objections lodged against them, and further that the court did not err in refusing to give in charge to the jury the special issues requested by the insurer. It is argued here that the issues were subject to the objections that they amounted to conditional submissions of partial incapacity and temporary incapacity, but the objections filed thereto in the trial court did not raise such question and we, therefore, do not decide it.

More difficulty inheres in the submission of the question of whether an incapacity is total or partial than in the question of whether same is permanent or temporary. An incapacity is either temporary or permanent and no change ever takes place in its status in that regard. On the other hand an employee may be totally incapacitated for a time and then partially incapacitated for the balance or a portion of the balance of the compensation period. When a case presents issues of fact as to whether temporary total incapacity was followed by partial incapacity, either temporary or permanent, it is difficult to submit in a single issue the question of whether the incapacity was total or partial. The trial court in this case recognized that fact. Special issue No. 10 called upon the jury to determine whether the claimant became incapacitated in any degree on December 17, 1937. Then followed special issues 11 and 12 above copied. In a series of special issues from No. 13 through No. 18 there were submitted to the jury specific questions with reference to the degree and duration of the incapacity. The jury was instructed that if it had found that the incapacity was total and temporary, then to fix the date when such total incapacity began and when same ceased or would cease, and further after the termination of total incapacity whether there would follow partial incapacity; whether such partial incapacity was permanent or tem-

porary, its degree and the date upon which same would terminate or had terminated. Considering all those special issues together we have concluded that they fairly submitted to the jury the question of the degree and duration of claimant's incapacity.

■ Having concluded that the special issues and the accompanying instructions were not subject to the objections and criticisms leveled at them, it follows that the court did not err in refusing to submit the above quoted special issues requested by the insurer. The court is not required to submit the same issue twice. If the form in which partial incapacity was submitted in Question 11 and in which temporary incapacity was submitted in Question 12, was thought to be incorrect, it was the duty of the insurer, if it desired to have that question reviewed on appeal, to specify in its objections to the charge the particulars in which same was incorrect and that duty was not discharged by requesting that the court submit the same questions in different forms. Art. 2185; Isbell v. Lennox, 116 Texas 522, 295 S. W. 920; Loving County v. Higginbotham, 115 S. W. (2d) 1110 (error dismissed).

In the charge partial incapacity was defined as follows:

"Further, that the term, 'partial incapacity,' as used herein has the following meaning: it shall mean where an employee by reason of injury sustained in the course of his employment is only able to perform part of the usual tasks of a workman, but, nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depression or reduction in his earning capacity."

We find it unnecessary to set out the objections leveled at the definition for the reason that similar objections were made to substantially the same definition in the case of Traders and General Insurance Co. v. Wright, 95 S. W. (2d) 753. The Court of Civil Appeals in that case approved the definition. Writ of error was granted and our opinion in the case is reported in 132 Texas 172, 123 S. W. (2d) 314. In disposing of the question presented as to the correctness of the definition of partial incapacity the following language was employed:

"We are in accord with the holding of the majority opinion upon the questions involved in the other assignments, including

its holding upon the assignment questioning the correctness of the definition of partial incapacity."

In view of that holding we shall not reexamine the question, but upon the authority thereof overrule the assignment complaining of the definition in the instant case.

A question is presented as to the rate of compensation. Art. 8309, Sec. 1, subsection 1, prescribes the formula for computing the average annual wage of an employee who shall have worked in the employment in which he was working at the time of the injury for substantially the whole of the immediately preceding year. Subsection 2 prescribes the formula for computing his average annual wage when he shall not have worked in such employment during substantially the whole of the year, but where an employee of the same class has worked substantially the whole of such years. Under the evidence in this case neither of those subsections was applicable. In such situation compensation is measured by subsection 3, which reads as follows:

"When by reason of the shortness of the time of the employment of the employee or other employee engaged in the same class of work in the manner and for the length of time specified in the above subsections 1 and 2, or other good and sufficient reasons it is impracticable to compute the average weekly wages as above defined, it shall be computed by the board in any manner which may seem just and fair to both parties."

The court submitted this special issue to the jury:

"What do you find from a preponderance of the evidence would be the average weekly wage of J. A. Schoolcraft which would be just and fair to both J. A. Schoolcraft and The Southern Underwriters? Answer in dollars and cents."

To which the jury answered "We answer $20.00." Based upon that answer the compensation rate should be sixty per cent. of $20.00, or $12.00 per week. It is disclosed that after the verdict was returned the claimant filed a motion for judgment in which he set up that the foregoing answer to the jury had no support in the evidence, and prayed that after notice that judgment be entered for compensation at the rate of $17.31 per week instead of $12.00 per week. The motion was granted, the jury's answer disregarded and compensation was awarded at the rate of $17.31 per week. In this we hold the court erred.

■ The only authority possessed by a trial court to disregard a finding of a jury upon a material issue submitted to it is that conferred by Article 2211, Vernon's Civil Statutes. Before the authority so to do was conferred by an amendment to that statute the rule was well settled that the trial court was without power to disregard a jury finding upon a material issue, but its discretion was limited to setting aside such finding and granting a new trial or to rendering judgment in conformity thereto, and this even though the court should conclude that there was no evidence supporting the answer. Massie v. Hutcheson, 270 S. W. 544; Hines v. Parks, 128 Texas 289, 96 S. W. (2d) 970. The article referred to now contains this provision:

" * * * Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence. * * *."

It was in the exercise of the authority there conferred that the trial court substituted its finding for that of the jury. If the answer of the jury had any support in the evidence, the action of the trial court was unauthorized. The question for decision then is: was there any evidence in the record to support the jury's answer to the issue? We find substantial evidence in support thereof. There was evidence that claimant was being paid 75c per hour at the time of his accident; that he had been in the employment of his employer for approximately six months during the year immediately preceding the accident, and that workers generally were employed for an average of only fifty per cent. of the time during any one year in the particular work in which claimant was engaged. No exact standard can be prescribed by the courts for measuring the compensation to which an employee is entitled under subsection 3 above quoted. We need not speculate on the mental processes of the jury, but it could have concluded that since the claimant earned $40.00 per week when employed and since he was never employed more than half the time, that it would be fair to place his average weekly wage at $20.00.

It appears that the trial court acted upon the theory that the insurer was bound to pay compensation at the rate of not less than $17.31 per week because for several weeks after the injury that amount was paid by it weekly to the claimant. As we understand the position of the claimant here it is that he was not limited by that amount, but that the insurer could not

be heard to question it; that it represented a minimum but not a maximum. We cannot adopt this view. Granting that it was strong evidence of the correct compensation rate, it cannot be held to be conclusive and indisputable evidence. Courts should encourage and not discourage the prompt payment of compensation when an injury is sustained by an employee, and a holding that payments made pending the final investigation of the claim would be binding upon the insurer both as to liability and rate of compensation regardless of what that investigation should disclose would manifestly discourage prompt payments following injuries.

The error above pointed out does not require that the case be retried since it may be cured by a reformation of the judgment. In his motion for judgment the claimant prayed in the alternative that in the event the court should overrule its motion to substitute its own finding for that of the jury on the issue of the compensation rate, to enter judgment based upon the findings of the jury, that is, upon the compensation rate of $12.00 per week, and upon oral submission that prayer was renewed. We shall, therefore, order that the judgments of the courts below be reformed rather than reversed and remanded.

Two other questions are raised in the application, but since they present nothing new and are well answered by claimant's brief, it would serve no purpose to write on them.

The judgments of the trial court and the Court of Civil Appeals will be reformed so as to base the compensation rate upon $12.00 per week instead of $17.31 per week, and, as reformed, they will be affirmed.

Opinion adopted by the Supreme Court January 21, 1942.

Rehearing overruled February 18, 1942.