EMPLOYERS' REINSURANCE CORPO-
RATION v. BRANTLEY.

No. 6047.

Court of Civil Appeals of Texas. Texarkana.

May 6, 1943.

Rehearing Denied June 3, 1943.

Vernon Coe and R. H. Whilden, both of Houston, for appellant.

Jones & Jones, of Marshall, for appellee.

WILLIAMS, Justice.

Arthur Brantley, the claimant and plaintiff below, recovered a judgment against appellant, Employers' Reinsurance Corporation, the insurer, for 100 weeks' compensation for total and permanent loss of the right eye. The points presented all complain of the manner of the submission of the case to the jury.

On July 16, 1941, claimant received an injury to his right eye from a falling limb while at work for the Shell Pipe Line Company in clearing a telephone right-of-way. Claimant alleged "that as a result of the above conditions and others, the plaintiff became blind, or practically blind, in his eye, and that said condition has con-

tinued up to this time, with no indication that his vision will improve from the present, as a result of which plaintiff has sustained the total and permanent loss of the sight of his eye. * * * In the alternative, said injury aggravated a prior existing diseased condition, causing total or partial permanent loss of sight and use of plaintiff's eye, as already set forth." Defendant entered a "general denial". In answer to claimant's request for admissions of facts, insurer admitted claimant received an injury to the right eye on above date, but denied "that such injury resulted in the disabilities claimed in plaintiff's pending cause of action, and will specially show that the disabilities, if any * * * are the result of an injury received * * * on or about September 25, 1941, when struck by an automobile on the * * * highway. * * *"

The physician called by the insurer as a witness testified that he examined and prescribed for the eye on July 17, 1941, and its vision then was 20—70; that at intervals afterwards up until September 23, 1941, in his examinations of the eye, the vision gradually improved, and on September 23, 1941, it was 2—25. This cause went to trial June 29, 1942. On May 28, 1942, above physician who again examined the eye testified that the vision was 20—20, or normal. A physician called by claimant testified that he examined the eye on December 18, 1941, and another physician testified that he examined the eye in May and June, 1942. According to the latter two physicians, their examination showed the eye to be cloudy and blurred, with floating bodies and the optic nerve scarcely discernible; that same was the result of a trauma and had resulted in the permanent and total loss of any working vision in the right eye. Claimant was struck on September 25, 1941, by an automobile at night while on the highway, receiving injuries which confined him in a hospital for several months.

Omitting the formal part of the charge and the definitions therein contained, the issues submitted and answers thereto follow.

"Special Issue No. 1: Did Arthur Brantley sustain a total loss of the sight of his right eye, or only partial loss of the sight of his right eye, by reason of the injury to his eye sustained by him on or about the 16th day of July 1941? Answer 'Total' or 'Partial.' Answer: Total.

"In connection with the foregoing issue, you are instructed that if you find from a preponderance of the evidence that Arthur Brantley sustained total loss of the sight of his right eye by reason of the injury to his eye sustained by him on or about the 16th day of July 1941, you will answer the foregoing Issue 'Total'; otherwise, you will answer 'Partial.'

"Special Issue No. 2: Was such loss of vision, if any, as inquired about in Special Issue No. 1, permanent or temporary? Answer 'Permanent' or 'Temporary.' Answer: Permanent.

"In connection with the foregoing issue, you are instructed that if you find from a preponderance of the evidence that such loss of vision was permanent, you will answer 'Permanent' to the foregoing Issue; otherwise, you will answer 'Temporary.'

"If you have answered Special Issue No. 2 'Temporary' then answer the following issue, otherwise, you need not answer same.

"Special Issue No. 3: For how many weeks, if any, do you find from a preponderance of the evidence that such loss of vision lasted or will last? Answer by giving the number of weeks, if any. Answer: ————.

"Special Issue No. 4: Was or is the loss of vision, if any, in Arthur Brantley's eye, solely the result of disease? Answer 'Yes' or 'No.' Answer: No.

"In connection with the foregoing issue, you are instructed that if you find from a preponderance of the evidence that such loss of vision, if any, is not or was not solely the result of disease, you will answer the foregoing issue 'No'; otherwise, you will answer 'Yes.'

"Special Issue No. 5: Was or is the loss of vision, if any, in Arthur Brantley's eye, solely the result of the automobile injuries he suffered on the 25th day of September, 1941? Answer 'Yes' or 'No.' Answer: No.

"If you find from a preponderance of the evidence that such loss of vision, if any, is not or was not solely the result of the automobile injuries he suffered on the 25th day of September 1941, you will answer the above issue 'No'; otherwise, you will answer 'Yes.'

"If you have answered Special Issue No. 1 'Partial', then answer the following issue; otherwise, do not answer it:

"Special Issue No. 6: From a preponderance of the evidence, what do you find to be or have been the percentage of the loss of vision in Arthur Brantley's right eye, as a result of the injury thereto on or about the 16th day of July 1941? Answer in per cent. Answer: ———."

Appellant timely excepted to the charge in that it did not afford the jury an opportunity to find that total loss of sight of the eye existed for a period of time and partial loss of sight of such eye for a period thereafter existed; and asserts that under the facts appellant was entitled to an unconditional submission of the issues then tendered to the court which would have afforded the jury an opportunity to pass upon such a theory of the extent of the injury. It is thought that the evidence raised such a theory of the extent of the injury. It is evident from an examination of the charge as appellant so contends, the jury having answered special issue No. 1 "Total", there was no way in which the jury could have said total disability lasted for a given number of weeks and that thereafter partial disability resulted either permanently or for a given number of weeks. In support of the matters above urged, appellant cites Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991; Commercial Standard Ins. Co. v. Davis, Tex.Civ.App., 135 S.W.2d 794; Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314.

Subsequent to the rendition of the cited decisions, Rules 277 and 279 of our Texas Rules of Civil Procedure were promulgated and were in effect at the time of the instant trial. It appears that the court submitted special issues No. 1 and No. 2 in the disjunctive, permissible and suggested in Rule 277.

It is to be observed from the hereinabove quoted portion of claimant's pleading that he alleged that the injury to the eye resulted in a total permanent loss of vision in such eye, and in the alternative, it resulted in a partial permanent loss of such vision. Issue No. 1 unconditionally submitted the issues whether the injury had resulted in a total permanent loss or a partial permanent loss of vision in the eye. Appellant, having answered above allegations as to the character and extent of the injury by a general denial, and not having further pleaded affirmatively that partial incapacity followed that of temporary total incapacity, was not entitled to the unconditional submission of independent issues inquiring as to the duration of either temporary total or partial incapacity. Rule 279 provides: "When the court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence, and * * * a party shall not be entitled to an affirmative submission of any issue in his behalf where such issue is raised only by a general denial and not by an affirmative written pleading on his part. Nothing herein shall change the burden of proof from what it would have been under a general denial." Under "the written pleadings" the controlling issues were whether the injury was total permanent or partial permanent.

The judgment will be affirmed.