**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant,**

v.

**Bobby J. CAMP, Appellee.**

**No. 14099.**

Court of Civil Appeals of Texas.

Houston.

May 9, 1963.

Rehearing Denied May 30, 1963.

was working at the time of the injury, whether for the same employer or not, for at least two hundred ten (210) days of the year immediately preceding the injury, his average weekly wage shall consist of three hundred (300) times the average daily wage or salary which he shall have earned during the days that he actually worked in such year, divided by fifty-two (52)."

The jury found in answer to Special Issue 13 that appellee had worked in the employment in which he was working when injured, whether for the same employer or not, at least 210 days during the year immediately preceding the date of his injury on April 28, 1961.

Appellant's complaint in its first six Points is that the finding of the jury to said Issue is not supported by any evidence, is against the weight and preponderance of the evidence, and that since appellee failed to establish his average weekly wage, the judgment of the court for weekly compensation in excess of the minimum of $9.00 per week is excessive.

The only direct evidence as to the number of days appellee worked in the same employment consists of his testimony. There is no dispute as to his daily wage on the days he worked, nor that appellant voluntarily paid him compensation benefits of $35.00 per week for some 19 10/35 weeks following his injury, or a total of $675.00, before cutting him off, for which amount appellant was given credit in the court's judgment.

Ramey, Brelsford, Hull & Flock, Donald Carroll, Tyler, for appellant.

Gordon Wellborn, Houston, Phenix & Keeling, Rex Houston, Henderson, John B. McDonald, Palestine, for appellee.

WERLEIN, Justice.

This is a workmen's compensation case in which judgment was rendered on the jury verdict in favor of appellee for total, permanent incapacity benefits and certain medical expenses.

Appellee undertook to establish his average weekly wage under Article 8309, Sec. 1(1), which provides:

"If the injured employee shall have worked in the employment in which he

Appellee testified in substance that roughnecks work seven days per week and that from April 28, 1960 to April 28, 1961, the date of the accident, he worked as a roughneck as many as 210 days; that he stayed in the oil fields from May, 1956 to September, 1960; that in September, 1960 until December 9, 1960 he did some welding for another employer; that he then worked three weeks for Brown & Root; that between December 9, 1960 and

January, 1961, he also did 9 days' roughneck work for Sam Trent Drilling Co.; and that he went to work for B. G. Byars Drilling Co. the early part of February, 1961 as a roughneck and was working for Byars at the time the accident occurred on April 28, 1961.

On cross-examination appellee again testified that he had worked as a roughneck at least 210 days from April 28, 1960 until April 28, 1961. When pressed by appellant's counsel, he stated he felt sure he had worked that many days, but wouldn't swear to it on his death bed if his life depended upon it; that he stayed pretty busy that year, and that when a rig goes down, "You can't sit around and wait for that rig to start back up. You have got to hunt another job." Appellee was unable to give the specific dates that he worked for various drillers. There appears to be some confusion and contradiction in his testimony given on cross-examination, but the record does not show that it was impossible for him to have worked as many as 210 days as a roughneck. Neither appellant nor appellee introduced work or time slips or records which might have definitely showed the dates appellee did roughneck work and for whom. We cannot say that the finding of the jury, that appellee did work 210 days in the kind of employment that he was engaged in at the time he was injured, is so against the great weight and preponderance of the evidence at to be manifestly wrong and unjust.

Furthermore, the law is well settled in this State that the voluntary payment of compensation by the workmen's compensation carrier, in the absence of a showing of fraud, accident, mistake or misrepresentation, constitutes an admission that the amount of compensation paid per week is based upon the proper wage rate. There is nothing in the record showing that appellant claims that the payment by it to appellee of 19 10/35 weeks' compensation in the amount of $35.00 per week was induced by fraud, accident or mistake, or any effort to compromise. Its admission consisting of such payment would in itself justify and authorize a recovery by appellee of compensation at the rate of $35.00 per week. Texas Employers Ins. Ass'n v. Grimes, Tev.Civ.App., 268 S.W.2d 786, ref., n. r. e.; Traders & General Ins. Co. v. Harper, Tex.Civ.App., 140 S.W.2d 593, error ref.; Texas Employers Ins. Ass'n v. Hamor, Tex.Civ.App., 97 S.W.2d 1041; Texas Employers Ins. Ass'n v. Hodnett, Tex.Civ.App., 216 S.W.2d 301, ref. n. r. e.; Fidelity Union Casualty Co. v. Dapperman, Tex.Civ.App., 47 S.W.2d 408, error dism.

After his injury, appellee went to Dr. P. M. DeCharles, of Tyler, Texas, for care and treatment. Appellant later assumed the responsibility for treatment of appellee by Dr. DeCharles and has taken care of all his charges. Appellee continued under Dr. DeCharles' care until September 12, 1961, when Dr. DeCharles released him, and reported such fact to appellant. At the same time appellee's compensation benefits were cut off by appellant.

The evidence is undisputed that appellee was operated on by Dr. DeCharles for a ruptured disk. Appellee testified that at the time Dr. DeCharles released him he did not feel that he could work or climb an oil field derrick, or stand on the ground and handle heavy long pieces of pipe or do any type of manual labor that required lifting or bending; that after Dr. DeCharles released him he went to see Dr. Bone at Henderson and was given some medicine, heat treatments, and massage of his back. Dr. Bone testified that appellee's complaints of pain and suffering were genuine; that he was still treating him at the time of the trial, and that the treatment given was necessary to relieve appellee of part of the effects of his injury. He testified that his total charges of $45.00 were reasonable and the customary charges.

Article 8306, Sec. 7, provides in part that:

"If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed after notice of the injury to the association or subscriber, the injured employee may provide said medical aid, nursing, hospital services, chiropractic services, and medicines at the cost and expense of the association."

This provision is not qualified by Article 8306, Sec. 7a, which does not apply to a factual situation such as that in the instant case.

 The question is whether appellant, after having had notice of appellee's injury failed to provide reasonable medical aid "as and when needed". The statement of Dr. DeCharles at the time he released appellee that he had done all that he could do, was in effect a refusal by him to render additional medical services. There is evidence that at such time appellee was still suffering from pain in his back and incapacity to work, and that he informed Dr. DeCharles that he was not "getting along too good". The treatment given appellee by Dr. Bone was necessary to relieve some of the pain and effects resulting from his injury. It is our view that the jury's findings to the effect that the services provided appellee by Dr. Bone subsequent to September, 1961, were reasonably required to relieve him from the effects of his injury, and that appellant failed to furnish such services to appellee, find support in the evidence. Travelers Insurance Company v. Hernandez, 5 Cir. 1960, 276 F. 2d 267.

We have read the entire statement of facts and applying the test enunciated by our Supreme Court in In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and Tudor v. Tudor, 1958, 158 Tex. 559, 314 S.W.2d 793, we have concluded that the jury's findings of total and permanent in-

capacity are not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Indeed, the jury's findings are amply supported by the evidence.

Judgment affirmed.