**TRANSAMERICA INSURANCE COMPANY,**
Appellant,

v.

**L. J. BESEDA, Appellee.**

No. 477.

Court of Civil Appeals of Texas.

Corpus Christi.

June 5, 1969.

First Motion for Rehearing Denied
July 10, 1969.

Rehearing Denied Aug. 7, 1969.

Keys, Russell, Watson & Seaman, James C. Watson, Corpus Christi, for appellant.

Allison, Baker & White, Guy Allison, Corpus Christi, for appellee.

## OPINION

GREEN, Chief Justice.

This is the second appeal in this cause. For the opinion of this Court on the appeal after the first trial, see Beseda v. Transamerica Insurance Company, Tex.Civ.App., 414 S.W.2d 742, wr. ref. n. r. e.

Appellant Insurance Company appeals from a judgment rendered after jury verdict allowing recovery in a workman's compensation case for total and permanent incapacity payable in a lump sum, and for $1,193.40 medical expenses.

Appellant in its first three points raises the question of prejudicial jury misconduct. The first point of error is as follows:

"First Point

There was prejudicial misconduct during the jury deliberations in that three jurors changed their votes of 'No' to 'Yes' in answering Special Issue No. 4 (inquiring whether appellee sustained any total incapacity) after the jury foreman and one other juror stated in effect that they had special knowledge and experience about workmen's compensation insurance coverage and that an injured employee would be considered totally incapacitated unless he could return to doing the identical type of work and every requirement thereof as he had done before his injury."

Special Issue No. 4 of the court's charge reads:

"Do you find from a preponderance of the evidence that L. J. Beseda sustained any total incapacity after September 27, 1963?"

The jury answered: "Yes."

"Total incapacity" was defined in the charge as follows:

"VI.

By the term 'total incapacity' as used in the Workmen's Compensation Law does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to prevent him from obtaining and retaining employment is ordinarily regarded as totally disabled."

The evidence was conflicting as to whether appellee was disabled by reason of the alleged accident of September 27, 1963, and if so of the extent of such disability. The medical evidence together with other testimony made a clear cut fact issue as to whether appellee sustained a disabling

injury as he alleged, and whether such injury, if any, caused any total incapacity. The jury found in answer to the first three special issues that appellee did sustain an accidental injury to his body on or about September 27, 1963, while in the scope of his employment with his named employer and answered special issue No. 5 that such accidental injury was a producing cause of his total incapacity.

It is appellant's contention that in the discussion of special issue 4, three of the jurors, Mrs. Jackson, Mrs. Hamon, and Mr. Tindle, voiced their strong opposition to finding any total incapacity, and that two of the other jurors, Johnson (the foreman) and Pickett in arguing the case with them stated that they had special knowledge of workmen's compensation law and what injured co-workers received in the number of weeks of compensation. They further stated to the other jurors, appellant contends, that appellee would be totally incapacitated unless he was able to return to work as a journeyman carpenter and do all the work required as such, including heavy lifting. Appellant says that these arguments of the two named jurors were based on their asserted claims of a superior knowledge of the employer's compensation law, and that the three jurors Mrs. Jackson, Mrs. Hamon, and Mr. Tindle, changed their votes after the statements of Johnson and Pickett from "no" to "yes" as to issue No. 4, and that this constituted prejudicial misconduct.

At the hearing on the motion for a new trial appellant placed three jurors, Mrs. Jackson, Mrs. Hamon, and Mr. Tindle, on the stand and appellee used as his witnesses jurors Johnson and Pickett. The testimony of these witnesses appears to us to warrant the conclusion that the arguments of the jurors on issue 4 were based on each juror's interpretation of "total incapacity" as that term was defined in the court's charge. No juror, including foreman Johnson and Pickett, claimed to have any special knowledge of compensation insurance law, although there was testimony that these two were

union members, and that in the union halls at times employee's insurance problems were discussed. Mrs. Jackson argued that one had to be a basket case in order to be totally incapacitated. Johnson and Pickett argued to other jurors that their construction of the court's charge was that appellee would be totally disabled if he could not return to his old job and perform the duties of a journeyman carpenter. It was generally agreed by the jurors that appellee did have a back injury, and there was evidence that Mrs. Jackson and Mrs. Hamon stated to the other jurors that they would not employ him in his condition even for light work.

Johnson and Pickett denied having discussed any law matter with the other jurors other than their interpretation of the court's definition of total incapacity given in the charge, and the application of such interpretation to the evidence. Pickett, in arguing for a "yes" answer, stated in the jury room that if he, as a welder, would lose one or both of his hands, he would consider that he was totally incapacitated under the charge, since he could not follow his trade any longer. This, he testified, was his construction of the court's definition. A careful reading of the statement of facts on the motion for a new trial convinces us that it was not shown that there was any discussion by Johnson and Pickett to the other jurors based on any claim made in the jury room of a superior knowledge of the law about employer's compensation insurance coverage. All discussions between the jurors were, according to the evidence, based on the interpretation given by each to the definition contained in the charge of total incapacity.

The trial court in his Findings of Fact and Conclusions of Law expressly found and concluded as follows:

*"Findings of Fact*

1. Juror, Mr. Troy Johnson, during discussion by Jurors of Special Issue No. 4, said that he interpreted the meaning of

'total incapacity' as requiring that the Plaintiff would have to return to work as a journeyman carpenter.

2. Juror, Mrs. Charles Jackson, during discussion by Jurors of Special Issue No. 4, said that she interpreted the meaning of 'total incapacity' as requiring that the Plaintiff would have to be a 'basket case.'

### Conclusions of Law

No prejudicial misconduct occurred by reason of statements of Jurors, Mr. Johnson and Mrs. Jackson."

■ As stated by our State Supreme Court in Compton v. Henrie, 364 S.W.2d 179, 182, a juror is not guilty of misconduct, and the verdict need not be set aside merely because he misconstrues a portion of the court's charge and argues an erroneous interpretation to other jurors. The opinion quotes from Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364, as follows:

" * * * an express misconstruction of the court's charge, *which does not bring to the attention of the jury law or facts outside the record*, should not be regarded as jury misconduct within the meaning of Rule 327. * * *"

■ From the standpoint of appellant, the most that can be said of the evidence of the five jurors on the hearing of the motion for new trial is that fact issues were raised as to the existence of misconduct. If such issues were raised, the decision of the trial court in overruling the motion is final on such fact issue. State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217, at p. 221 (syl. 5).

Appellant's first point of error is overruled.

■ Appellant's second point of error reads:

"There was prejudicial misconduct during the jury deliberations on Special Issue No. 19 (inquiring whether another employee of similiar classification had worked as much as 210 days in a year) in that the jurors answered said issue 'Yes' based upon there being at least one carpenter (appellee's classification) on the job for at least 210 days in the year before appellee's injury, although there was not one individual carpenter that had himself worked at least 210 days."

Evidence was introduced that a Mr. Louis Armstrong was a similar employee who had a similar type job who had worked 259 days during the year preceding the alleged injury to appellee, and who made 25 cents more per hour than did appellee because he was classified as a foreman. The total wages of plaintiff and Armstrong as well as of other employees was before the jury. This evidence was material on the wage rate issues. Although other issues on wage rate were submitted and were answered by the jury, the point of error is addressed only to the answer to special issue No. 19, which answer is recited in appellant's point, supra. We find that the record shows no error to have occurred in the jury's deliberations on this issue.

The courts have been liberal in construing the Workmen's Compensation Law in requiring but slight proof of proper wage rate when, under the evidence, wage rate is not considered a serious controverted issue. Argonaut Southwest Insurance Company v. Morris, Tex.Civ.App., 420 S. W.2d 760, 766, wr. ref. n. r. e., and authorities cited.

■ The evidence establishes that workmen's compensation was paid by appellant to appellee for two weeks at the maximum rate of $35.00 per week without any pleading or proof as to fraud, accident, mistake, or misrepresentation. The voluntary payment of compensation by the insurance carrier, in the absence of a showing of fraud, accident, mistake or misrepresentation, constitutes an admission that the amount of compensation paid per week is based upon a proper wage rate. United States Fidelity and Guaranty Company v.

Camp, Tex.Civ.App., 367 S.W.2d 952, syl. (2), wr. ref. n. r. e., and authorities there cited.

■■■ The second point of error is overruled.

Appellant's third point reads:

"The jury foreman was guilty of misconduct in forcing a verdict by refusing a request to recess, although one of the jurors had a severe headache and the jury worked through and past normal dinner time, returning its verdict into court at 8:10 p. m."

Juror Mrs. Jackson testified that along about 6:00 p. m. after the jury had been deliberating for several hours she had a bad headache and was hungry, and asked for a recess. In this connection, foreman Johnson testified:

"Q Incidentally, do you recall that Mrs. Jackson, toward the end of the deliberations, asked for a recess or some such thing?

A I don't recall her asking for a recess. There was some discussion, I think, close to the end about coming back the next week and finishing up. We were so close to being through that the majority of them felt like that we could finish up if we went ahead and stayed for thirty minutes or an hour longer.

Q Okay. Did Mrs. Jackson ever tell you she had a headache and wanted to quit or—

A If she did, I didn't hear her whenever she said that she had a headache or was sick in anyway, no."

Thereupon, the jury did continue their deliberations to 8:10, at which time it reported its final verdict to the court. We see no error as to this matter, and overrule appellant's third point.

■■■ Appellant's fourth and fifth points read:

"Fourth Point

The trial court erred in admitting before the jury Exhibit P–3A, which was a letter argument submitted to the Industrial Accident Board on behalf of appellant by independent adjusters in Austin, Texas, while appellee's claim was pending there, because the same did not constitute an 'admission' binding on appellant and the same was prejudicial to appellant when unexplained.

Fifth Point

Having allowed appellee to introduce into evidence before the jury Exhibit P–3A (denominated a 'pleading' by appellee), wherein appellant ostensibly admitted that appellee had returned to work and been laid off (which matter was highly disputed and constituted a critical point in the evidence), the trial court erred in refusing appellant the right to explain the statement by showing that the source of such information was appellee himself."

It was appellant's contention in the trial court that appellee did not sustain any disabling injury on the job on September 27th, as claimed, that he continued to work until October 7th, and that he was laid off on that date because of a reduction in carpenter force, and that he did not work on the job thereafter. Appellee contended that after receiving medical attention, he did go back to work on the same job on November 4 and that he was laid off work on November 7 because of his inability to perform the work required of a carpenter. As evidence of a position taken by appellant before the Industrial Accident Board inconsistent with its position in court, appellee offered in testimony a letter addressed to the Board by the agent of appellant representing it before the Board in this case. Appellant objected on the grounds that the letter was hearsay, that the source of the statements in the letter was the appellee himself, and that the letter was in the nature of a brief or argument and not an official "statement of contention". The objections were overruled, and the letter was placed in evi-

dence as P–3A. The objectional part as quoted from appellant's brief reads as follows:

"* * * it being the contention of the insurance company that at the time this claimant was discharged for duty and returned to work on November 4, 1963, he had recovered with no permanent partial.

This is supported by the attached final report of the attending physician, Dr. F. W. Yeager, dated November 6, 1963.

Referring to the Notice of Injury and Claim for Compensation filed by the claimant, you will note he admits returning to work November 4, 1963 at his original hourly wage of $3.55.

We are advised that he was laid off on November 7, 1963, although, his compensation was paid through November 9, 1963."

Statements made by a party before the Industrial Accident Board are admissible where they are in conflict with the position taken at the trial. Texas Employers Insurance Association v. Weber, Tex.Civ. App., 386 S.W.2d 835, wr. ref. n. r. e. The trial court did not err in overruling appellant's objections to this evidence. The fourth point of error is overruled.

■ After the admission in evidence of P–3A, appellant sought to explain that the source of the statements contained therein was the appellee himself. This the appellant tried to do by offering in evidence letters written by certain of appellant's agents and adjusters to other of its adjusters or agents. Appellee's objections that such letters were hearsay and self-serving were sustained and the letters were excluded. We see no error in such rulings.

However, after the above rulings were made by the trial court one of these letters was introduced in evidence by appellee, and read to the jury. This letter stated that appellee had advised the writer that he did return to work on November 4, and was laid off on November 7. Thus it was shown to the jury that the source of appellant's information on this point was the appellee, and we find that appellant suffered no harm by reason of the complained of rulings of the court. We see no merit in the fifth point of error. Same is overruled.

Appellant's sixth and seventh points are to the effect that the court erred in overruling its objections to special issue 23 and in entering judgment for medical expenses, because there was no evidence and insufficient evidence to support the submission of said special issue or the jury's answer thereto. Issue 23 and the jury's answer read as follows:

"What sum of money, if any, do you find from a preponderance of the evidence to be the reasonable costs of necessary medical treatment and drugs, if any, incurred by L. J. Beseda as a result of the injury, if any, he received on September 27, 1963?

Answer: $1,193.30."

Neither Dr. Burns nor Dr. Sharpe, two of the attending physicians whose bills were in evidence, testified on the trial. The medical bills of these two doctors were proven by testimony of the appellee that the various services shown on the itemized bills were rendered, and by testimony of the witness Dr. Anderson, also an attending physician, that such services were, in his opinion, reasonable and necessary. The total of these bills exceeded the amount found by the jury.

■ Other medical bills, some of which had been paid or assumed by appellant, were in evidence. The jury were asked only about the reasonable cost of necessary medical treatment and drugs *incurred by L. J. Beseda* as the result of his injury, if any. If an injured party pays or recognizes his obligation to pay for such expenses, and sues for them, and the owners are content to look alone to him for payment, such expenses become a part of his claim for compensation within the meaning of section 4a, Article 8307, Vernon's Ann.

Tex.Civ.St.; Texas Casualty Insurance Company v. Beasley, Tex.Sup.Ct., 391 S.W. 2d 33, 40.

■ We find that there was evidence legally and factually to support the submission of special issue 23, and to support the jury's answer thereto. The sixth and seventh points of error are overruled.

Appellant's 8th point of error objects to the form of the judgment, saying that it is uncertain and subject to further dispute because it does not specify the amount of money which appellee is entitled to recover from appellant.

■ The trial court in rendering judgment did not make the usual calculations and fix the amount of recovery by specifying the sum in dollars and cents to be recovered by appellee. Instead it decreed that appellee recover from appellant "for 398⅜ weeks less two installments heretofore made, at the rate of $35.00 a week for total permanent disability, beginning October 14, 1963, with lawful interest thereon until the date of entry hereof, said payments due in a lump sum" with statutory discount benefits as provided by law. It further provided that 30% of the amount of the award be paid to appellees' named attorneys, and that the judgment bear interest at the lawful statutory rate of four percent from its date, same being June 27, 1968. In accordance with the rules of determining the amount of dollars and cents due under this judgment under the appropriate statutes, the sum due at the date of decree when discounted as a lump sum payment is subject to exact computation, and there is no fatal defect in the decree. We overrule point of error No. 8.

However, we appreciate the point raised in appellant's brief that if and when the judgment becomes final, and appellant wishes to make lawful tender to appellee of the sum due, disagreement might arise between the parties because of the failure of the decree to state, in dollars and cents, the sum due at the date of the entry of the decree. Opportunity is given either party, on motion for rehearing and reply thereto, to give this Court the benefit of its own calculations and conclusions of the sum due and payable at the date of the entry of the judgment under the findings of the jury and court, giving proper legal discount for lump sum payment. In the event we then deem it proper, we may make such change in the court's judgment so as to specify the amount to be recovered, with legal interest from the date of the rendition of the trial court's decree, as we believe to be appropriate.

Affirmed.

## OPINION ON MOTION FOR REHEARING

Appellant's Motion for Rehearing is overruled, except as to the following.

We find that the amount of the judgment for past-due benefits and future benefits, discounted for lump sum payment, should be $14,507.50 as of the date of the entry of the decree (June 27, 1968). To this should be added the sum of $1,193.30 medical benefits as found by the jury, making a total recovery of $15,700.80. Appellee L. J. Beseda is entitled to recover from appellant 70% of this total, and his attorneys of record are entitled to receive as their fee 30% of said total sum. The judgment shall bear interest at 4% per annum from June 27, 1968 until paid. The judgment of the trial court is ordered amended so that the recovery shall be as herein specified.

All costs are charged against appellant.