### TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Petitioner,

v.

### Bradley M. SHANNON, Respondent.

### No. B–2177.

Supreme Court of Texas.

Nov. 18, 1970.

Gibson, Ochsner, Adkins, Harlan & Hankins, S. Thomas Morris, Amarillo, for petitioner.

Smith & Smith, Mark Smith, Lubbock, for respondent.

GREENHILL, Justice.

The determination of this workmen's compensation case involves four main problems: (1) whether there is evidence of a general injury to the body of the plaintiff; (2) the correctness of the wording of the jury issue dealing with extension of an injury to the leg into the plaintiff's body; (3) whether the plaintiff's wage rate was properly proved; and (4) whether the voluntary payment before suit of compensation at a particular rate constitutes a judicial admission of the correctness of the wage rate so as to obviate the necessity of jury findings on wage rate.

The plaintiff Shannon, a student at Texas Tech, was severely injured on the first day of his summer employment on an oil rig. Trial was to a jury which found that plaintiff had suffered a general injury to his body and that he had been totally and permanently disabled. The jury also found, among other things, that the [specific] injury to his leg extended to *or* affected other parts of his body. As to wage rate, the jury found that there was no other workman of the same class as the plaintiff who had worked substantially the whole of a year in the area, and that $153 per week would be a just and fair wage rate for the plaintiff. The Court of Civil Appeals affirmed. 453 S.W.2d 217. Because of the procedural errors pointed out below, we reverse the judgments and remand the cause to the district court for a new trial.

The facts surrounding the plaintiff's injury are set out in detail in the opinion of the Court of Civil Appeals. The plaintiff was accidentally struck from behind in the legs by heavy metal tongs. The blow was to the upper part of his legs. He was thrown on his back to the floor of the derrick. The blow to his legs, particularly his right leg, was so severe as to require hospitalization and surgery.

When the plaintiff was thrown to the floor, his back was bruised; and, for a short time, he passed blood in his urine. It is therefore undisputed that his back and legs were accidentally injured on the job. The problem is the extent of the disability caused by the accident and the amount of recovery allowed therefor under Legislative acts. The statutes provide one form of recovery for incapacity because of general injuries to the body, and a different (and less) recovery for incapacity due to specific injuries such as an injury to, or loss of, a leg. A major question is whether plaintiff is incapacitated because of a general injury to the body or is incapacitated only because of a specific injury to his right leg.

The only witness to take the stand was the plaintiff himself. The only other evidence came from part of the deposition of the doctor selected by the defendant.

For purposes of this opinion, it may be fairly said that the plaintiff's left leg was injured but was healed. His right leg, however, did not heal. A nonmalignant tumor (a lipoma) developed, and there was surgery to remove it before trial. There was evidence that while the tumor was not malignant, it was growing back, or had not been completely excised by the surgery.

The plaintiff also complained on the trial of pain in his low back. Incapacity due to a back injury is considered a general injury. But his testimony was that his pain began in, or emanated from, the leg in the area of the tumor, and went up to the low back and down to his foot. His back hurt only when the leg hurt.

The doctor agreed that the right leg was seriously injured and that the tumor was related to the accidental injury. But he found no injury to the back. He found no abnormalities except for the plaintiff's right leg. He found no evidence of any incapacity, or of injury to any part of the plaintiff's body, except for his right leg.

The doctor, however, accepted as true the plaintiff's statement of his pain, and he could not explain the pain in the plaintiff's back. He testified that, "I would suggest before they hired him [again] that he get a neurological evaluation to evaluate his

difficulty that apparently is limiting his job now. * *· * I would be reluctant to recommend or pass him to do manual labor, because * * * I am not sure what the cause of his problem is, and it [manual labor] might actually make the situation worse." The doctor, however, was not a neurosurgeon. He testified that he was not a specialist in the field. His testimony was that he could find no injury to the nerve or other physical abnormality except as noted above.[1]

■ The fact that pain alone (as distinguished from an extension of the injury) extends from an injury to a specific member of the body into the body does not make the injury a general one and will not support a finding of general incapacity. Texas Employers' Ins. Assn. v. Brownlee, 152 Tex. 247, 256 S.W.2d 76 (1953); Texas Employers' Ins. Assn. v. Espinosa, 367 S.W. 2d 667 (Tex.1963).

■ It is our opinion that there is no evidence of a general injury to the plaintiff's body which caused a total and permanent incapacity, and that there is no evidence to support the answers of the jury in this regard.

This brings us to the next set of jury issues, those dealing with the extension or not of the injury from the right leg into the body so as to cause a general incapacity. The jury was asked in a special issue whether the injury to the plaintiff's leg "extended to or affected parts of the body other than the leg, thereby causing incapacity." The jury answered in the affirmative.

■ The problem, however, is the use of the word "or" in the special issue. The question asked the jury was whether the injury to the leg extended to or affected

other parts of the body. Defendant's counsel properly pointed out the error to the trial judge and preserved the point that the word to be used in the issue should have been "and" rather than "or"; i. e., did the leg injury extend to and affect the body. This point was the subject of an opinion by this Court in Travelers Insurance Co. v. Marmolejo, 383 S.W.2d 380 (Tex.1964). It was there held that it must be found that the injury did extend to and affect other portions of the body. The reasons for the rule are there set out and need not be repeated here. The point thus preserved by the defendant is therefore well taken.

There is yet another reason this cause must be reversed. The Legislature has provided a method for monetary recovery in workmen's compensation cases which is tied to the plaintiff's wage rate; and it has provided for the establishment of the plaintiff's wage rate as part of the scheme. The burden under the statute is upon the plaintiff to establish his wage rate. Art. 8309 § 1, Vernon's Annotated Texas Civil Statutes; Texas Employer's Ins. Co. v. Ford, 153 Tex. 470, 271 S.W.2d 397 (1954).

Under subsection 1 of the above statute, if the plaintiff has worked 210 days in the same or similar employment (as described in the statute), then *his* wages are to be used to establish his wage rate and the amount of his recovery. The plaintiff here had worked only one day; so this subsection was inapplicable.

Under subsection ·2, if the plaintiff had not so worked for 210 days but other employees of the same class had worked at least 210 days in similar employment in the same or neighboring place, then the wages of such other employee or employees are to be used to determine the plaintiff's wage rate. But if neither of the factual re-

---

1. On a bill of exception outside the hearing of the jury, the doctor testified that it was conceivable that there was an injury to the plaintiff's sciatic nerve which extends from his leg into the low back and to the spine. This testimony was excluded because of the form of the questions, because the doctor did not purport to be an expert in this field, and because the testimony was speculative. The question of the admissibility or not of this testimony is not before us.

quirements of subsections 1 and 2 are present and applicable, then the court goes to subsection 3 which provides for the fixing of the plaintiff's wage rate in a manner which is "just and fair" to both parties.

▮ The *Ford* case cited just above holds that the burden is upon the claimant to show by competent evidence that his wages cannot be computed under subsections 1 or 2 before resort can be had to the "just and fair" provisions of subsection 3. This the plaintiff failed to do. As to subsection 2, his testimony was, "I don't think anybody worked [for] a full year." Asked if he knew anybody else who worked in that area in that line of work for 210 days, he stated, "I don't know." This is not enough under the *Ford* case. As set out in the *Ford* opinion, almost identical questions were asked in *Ford,* and the same answers were given. This Court there concluded, "Since, in our view, there was no evidence eliminating Subsection 2, * * * the case must be remanded generally for that reason, * * *" 271 S. W.2d at 399. These rules were repeated in Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (1960).

Since subsection 1 was obviously not applicable and since there was a failure to eliminate subsection 2 under the *Ford* opinion, the trial court erred in fixing the plaintiff's wage rate under subsection 3.

Counsel for the plaintiff contends, however, that the plaintiff's wage rate is established by judicial admission; i. e., that the admitted payments by the insurance company to the plaintiff of $35 per week for approximately six weeks constituted an admission which is binding on it, there being no evidence that such payments were made as the result of fraud, accident or mistake. The Court of Civil Appeals so held. This, too, was error.

There have been two lines of opinions of the Courts of Civil Appeals on this point. The Court of Civil Appeals in this case cited two opinions in one of the lines

but did not mention the opinions of this Court or those of other Courts of Civil Appeals on the subject.

Before the opinion in Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991 (1942), some of the Courts of Civil Appeals had held that in the absence of fraud, accident or mistake, voluntary payment of compensation constituted an admission sufficient to establish wage rate or to support a judgment. See for example Traders & General Ins. Co. v. Harper, 140 S.W.2d 593 (Tex.Civ.App. 1940, writ refused); Texas Employers Ins. Assn. v. Hamor, 97 S.W.2d 1041 (Tex. Civ.App.1936, no writ). Both of these opinions cite a supporting line of Courts of Civil Appeals opinions. The *Hamor* opinion was cited by the Court of Civil Appeals in *Schoolcraft* and also mentioned in the *Schoolcraft* opinion by this Court. This Court was therefore aware of the problem.

In *Schoolcraft,* the jury found the plaintiff's wage rate to be $12 per week under subsection 3, the "just and fair" provision. After the verdict, the trial court was persuaded to enter judgment for $17.31 per week because the insurance company had made voluntary payments to the plaintiff in that amount for 12 weeks, and that action constituted a binding admission, there being no fraud, accident or mistake. The Court of Civil Appeals in *Schoolcraft* affirmed. This Court reversed. It rendered judgment for the amount of the jury's verdict. The reason for the rule was thus stated:

"* * * Granting that it [the payment by the insurance company at $17.31 per week] was strong evidence of the correct compensation rate, it cannot be held to be conclusive and indisputable evidence. Courts should encourage and not discourage the prompt payment of compensation when an injury is sustained by an employee, and a holding that payments made pending the final investigation of the claim would be binding upon

the insurer both as to liability and rate of compensation regardless of what that investigation should disclose would manifestly discourage prompt payments following injuries." 158 S.W.2d at 995.

Notwithstanding the *Schoolcraft* opinion, a Court of Civil Appeals in Texas Employers Ins. Assn. v. Hodnett, 216 S.W.2d 301 (1949, writ refused n. r. e.) went back to the *Harper* opinion cited above. A similar holding was made in Texas Employers Ins. Assn. v. Grimes, 268 S.W.2d 786 (Tex.Civ.App.1954, writ refused n. r. e.). An examination of the application for writ of error reveals that the wage rate problem was not brought to this Court in *Grimes*.

Then came Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (1960). The jury found that Griffin's wage rate could not be fixed under subsections 1 and 2. His wage rate was then fixed under subsection 3 so as to call for a recovery of $35 per week. The insurance company had paid Griffin $35 per week for 22 weeks before the trial. The plaintiff contended, among other things, that the payments established the plaintiff's wage rate. The Court of Civil Appeals disagreed and wrote on rehearing, "We think Judge Hickman has held contrary to appellee's contention in *Southern Underwriters v. Schoolcraft*." 323 S.W.2d 607 at 609. In a 5 to 4 decision, this Court affirmed the Court of Civil Appeals and held that the case had to be retried because, in effect, there was some evidence that there was another workman who had worked substantially a year, and hence Griffin's wage rate had to be fixed under subsection 2, and that therefore subsection 3 could not be used. The dissent, filed by the writer of this opinion, differed on applicability of subsection 2 and would have held that subsection 3 could be used. As to there being evidence of what was just and fair, the dissent pointed out the payment by the insurance company of $35 per week, and that while the payment was not a binding admission under *Schoolcraft,* it was at least "some

evidence" to support a finding under subsection 3. The dissent pointed to the line of cases which included *Hodnett* and *Grimes* opinions discussed above. The majority opinion did not write on this problem, but obviously did not consider the $35 payments as a binding judicial admission of wage rate because it called for a new trial to establish wage rate under the evidence.

Thereafter in United States Fidelity and Guaranty Co. v. Camp, 367 S.W.2d 952 (Tex.Civ.App.1963, writ refused n. r. e.), a Court of Civil Appeals held that a finding of the plaintiff's wage rate under subsection 1 was supported by sufficient evidence. The court added (unnecessarily) that, "Furthermore, the law is well settled * * * that the voluntary payment of compensation * * * constitutes an admission that the amount of compensation paid per week is based upon the proper wage rate." 367 S.W.2d at 954. The opinion cited the *Grimes* and *Harper* decisions discussed above.

After the *Griffin* opinion, this Court wrote in Hartford Accident and Ind. Co. v. Hale, 400 S.W.2d 310 (Tex.1966):

> " * * * We held in *Southern Underwriters v. Schoolcraft * * * that voluntary payment of weekly compensation benefits would not estop an insurer from denying liability for weekly benefits in the amount so paid. * * * "* 400 S.W.2d at 313.

The *Schoolcraft* opinion was then followed by the Dallas Court of Civil Appeals in Travelers Ins. Co. v. Sides, 403 S.W.2d 519 (1966, writ refused n. r. e.), and by the Amarillo Court of Civil Appeals in Garrard v. Texas Employers Ins. Assn., 423 S.W.2d 93 (1967, no writ), where Chief Justice Denton wrote, "It is well settled that the amount paid by the insuror is not conclusive upon the insuror nor does it constitute a judicial admission [citing *Schoolcraft*]. * * * " However, the Corpus Christi Court of Civil Appeals recently wrote in Transamerica Ins. Co.

v. Beseda, 443 S.W.2d 915 (1969, writ refused n. r. e.), that:

"* * * The voluntary payment of compensation by the insurance carrier, in the absence of a showing of fraud, accident, mistake or misrepresentation, constitutes an admission that the amount of compensation paid per week is based upon a proper wage rate [citing the *Camp* case discussed above]. * * *" 443 S.W.2d 919–920.

While the *Beseda* case did come here by writ of error, no point as to the wage rate was presented.

■ We here reaffirm the rule announced in *Schoolcraft*: the voluntary payment of workmen's compensation at a particular rate is not a judicial admission of the correct rate of compensation. Holdings and expressions to the contrary in *Harper, Hamor, Hodnett, Grimes, Camp,* and *Beseda* and similar cases are disapproved.

The final points of the defendant insurance company relate to the exclusion of its evidence with respect to the possible benefits of further surgery. The injury to the plaintiff occurred in July of 1967. The surgery to remove the tumor occurred in February of 1968. The award of the Industrial Accident Board was on August 1, 1968. The doctor was prepared to testify upon the trial that the lipoma had not been completely excised, that further surgery would be beneficial, and that such further surgery would prevent the recurrence of the tumor. He recommended the operation. The doctor estimated that surgery would require 3 or 4 days of hospitalization and 2 or 3 weeks of convalescence. The insurance company tendered this operation on March 19, 1969, and it stated its willingness to pay for the operation.

Upon the trial on July 28, 1969, the plaintiff made a motion in limine to exclude such testimony. The motion was granted. Upon appeal, the Court of Civil Appeals overruled the defendant's point on this matter without writing upon it.

The trial court correctly excluded this testimony under Commercial Standard Insurance Co. v. Cotton, 443 S.W.2d 423 (Tex.Civ.App.1969, writ refused), and cases therein cited. Counsel for the defendant recognizes that the *Cotton* case is directly in point, but he urges us to reconsider (overrule) *Cotton*. We decline to do so.

The judgments of the district court and the Court of Civil Appeals are reversed, and the cause is remanded to the district court for a new trial.