**AETNA INSURANCE COMPANY,**
**Appellant,**

v.

**Johnny H. GIDDENS, Appellee.**

**No. 14928.**

Court of Civil Appeals of Texas,
San Antonio.

June 30, 1971.

Rehearing Denied Nov. 24, 1971.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellant.

Pat Maloney, San Antonio, for appellee.

CADENA, Justice.

This is an appeal by Aetna Insurance Company from a judgment, based on a jury verdict, awarding appellee, Johnny H. Giddens, the maximum compensation allowable under our Workmen's Compensation Act for a general injury resulting in total and permanent disability.

The jury found that appellee had not worked in the same or similar employment as that in which he was engaged at the time of his injury for at least 210 days during the year preceding the injury (issue 16); that there was no employee in Bexar County, Texas doing the same or similar work who had worked for 210 days or more during the year preceding appellee's injury (issue 18); and that an average weekly wage for appellee which would be just and fair to both parties was $120.00 per week (issue 20). The compensation allowed appellee was based on this "just and fair" average weekly wage.

The evidence here is undisputed that appellee had not, during the year preceding his injury, worked in the employment in which he was engaged at the time of the injury, for a period of at least 210 days. His average weekly wages, then, could not be computed under Subdivision (1) of Section 1 of Article 8309, Vernon's Annotated Civil Statutes.

Subdivision (2) of Section 1 provides that where Subdivision (1) is inapplicable, the average weekly wage shall be computed by reference to the wages earned by "an employee of the same class, working at least two hundred ten (210) days of such immediately preceding year, in the same or in a similar employment, in the same or a neighboring place, . . . ." Subdivision (3) provides that whenever it is impracticable to compute the average weekly wage under Subdivision (1) or Subdivision (2), it shall be computed "in any manner which may seem just and fair to both parties, as of the date of injury."

Appellant here contends that there is no evidence to support a grant of compensation under Subdivision (3).

It is well settled that the burden is upon a compensation claimant to show that his average weekly wages cannot be com-

puted under Subdivision (1) or Subdivision (2) before he may recover under Subdivision (3). Texas Employers' Ins. Ass'n v. Shannon, 462 S.W.2d 559 (Tex.1970); Texas Employers' Ins. Ass'n. v. Ford, 153 Tex. 470, 271 S.W.2d 397 (1954). On the other hand, our courts are committed to the view that where no real contest is made of the wage issue, only slight proof is required to negative the application of Subdivisions (1) and (2). American Motorists Ins. Co. v. McNiel, 404 S.W.2d 905 (Tex. Civ.App.—Fort Worth 1966, no writ); American General Ins. Co. v. Hightower, 279 S.W.2d 397 (Tex.Civ.App.—Eastland 1955, writ ref'd n. r. e.); Southern Underwriters v. Boswell, 141 S.W.2d 442 (Tex. Civ.App.—Fort Worth 1940, aff'd 138 Tex. 255, 158 S.W.2d 280).

In this case appellant introduced no evidence relating to the issue of wage computation. Appellee testified that "if it don't rain too much" he worked as much as a quarter of a year. He also said that "it gets slowed down during Christmas and New Years. For about two weeks there it is completely dead." His employer testified that the "life of a carpenter" is such that "there are times when he can't work simply because of conditions or material or that sort of thing," and that, starting in the fall, there are periods when work is unavailable "by reason of either the weather or shortage of supplies." This witness testified that he paid appellee three dollars an hour, which he described as a "pretty good" and "pretty fair" average for carpenters working in the area. Appellee did a full day's work "When he worked . . . Well, I mean there was rain and stuff like that, but when he worked, I got a good days work out of him." Absent rain, shortage of materials and "stuff like that," appellee worked five eight-hour days a week.

If, from the 365 days which make up a calendar year, we substract Saturdays and Sundays, there remains a maximum of 261 normal working days. This is reduced to 247 by the fact, according to the testimony of appellee, that there are two "dead" weeks "during Christmas and New Years." Holidays universally observed (excluding Christmas and New Year's day, which are included within the two "dead" weeks) reduce this figure to 238, without taking account of days lost because of weather, shortage of materials, or illness.

Appellee began work in October, 1968. His wage records for the weeks ending October 8, October 16, October 23, November 15, November 20 and November 22, 1968, reveal that during this period of more than six weeks he received a total of $430.-00 in wages. That is, during that period, he worked less than 18 hours, which means that he averaged, in round figures, 3 work days a week. Stated differently, in terms of a five-day work week, he was unable to work two days a week. Under the record as it stands before us, the loss of these two days can be attributed only to weather, shortage of materials, and "stuff like that."

■ In the absence of a real controversy concerning computation of the wage rate, we believe that the evidence outlined above constitutes, at the least, "slight" evidence sufficient to require that appellant's "no evidence" points be overruled.

Even if we are mistaken in holding that appellee produced that "slight" evidence which is required to show the inapplicability of Subdivision (2), the error of the trial court in overruling appellant's motion to disregard the jury findings on wage rate must be considered harmless. The evidence is undisputed that carpenters receive an average of $24.00 a day for each day they work. If any carpenter had worked for 210 days during the year immediately preceding appellee's injury, he would have received a total of $5,040.00. As this Court pointed out in Southern Underwriters v. Jordan, 122 S.W.2d 260, 261 (1938, no writ): "It therefore becomes plain that whether the weekly wage was fixed under subdivision two or three, the result would have been the same. Plaintiff in error has shown no injury." See Rule 434, Texas Rules of Civil Procedure; Texas General

Indemnity Co. v. Thomas, 428 S.W.2d 463 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); Consolidated Casualty Ins. Co. v. Ray, 267 S.W.2d 880 (Tex.Civ.App.—San Antonio 1954, writ ref'd n. r. e.); Southern Underwriters v. Grimes, 146 S.W.2d 1058 (Tex.Civ.App.—San Antonio 1940, writ dism'd judgm't corr.).

The judgment of the trial court is affirmed.

BARROW, Chief Justice.

I respectfully dissent. The opinion of the majority is contrary to the recent holding of the Supreme Court in Texas Employers' Insurance Association v. Shannon, 462 S.W.2d 559 (Tex.1970). There, as in this case, plaintiff was found to have been totally and permanently disabled after a general injury. The jury found, as in this case, that there was no other workman of the same class as plaintiff who had worked substantially the whole of the year in the area, and that a fair and just wage rate would be a sum substantially above the amount required for maximum weekly benefits under the Workmen's Compensation Act ($153.00 per week). The Supreme Court held that the cause must be reversed because plaintiff had failed to establish his wage rate as required by Article 8309, Section 1, Vernon's Annotated Civil Statutes. The Court said: "The Legislature has provided a method for monetary recovery in workmen's compensation cases which is tied to the plaintiff's wage rate; and it has provided for the establishment of the plaintiff's wage rate as part of the scheme. The burden under the statute is upon the plaintiff to establish his wage rate." (462 S.W.2d 559 at 562). See also Griffin v. Superior Insurance Company, 161 Tex. 195, 338 S.W.2d 415 (Tex.1960).

Admittedly, plaintiff does not come under Subsection (1) of the statute. However, as is seen by the resume of the testimony set forth in the majority opinion,

plaintiff failed to eliminate Subsection (2) of the statute. Although he was asked the direct question by his counsel as to whether other people in the same work as plaintiff worked as much as 210 days a year, he did not respond and he wholly failed to eliminate this subsection. Nor was there such testimony from any other source. It is seen that the testimony in this case is almost identical to that which was held to be "no evidence" in Texas Employers' Insurance Association v. Ford, 153 Tex. 470, 271 S.W. 2d 397 (Tex.1954).

In *Shannon*, supra, the plaintiff testified that, " 'I don't think anybody worked [for] a full year.' " The Supreme Court said: "This is not enough under the *Ford* case." (462 S.W.2d 559 at 563). Here plaintiff did not even express such an opinion. See also: Garrard v. Texas Employers Insurance Association, 423 S.W.2d 93 (Tex.Civ. App.—Amarillo 1967, no writ); Texas Employers Insurance Association v. Smith, 469 S.W.2d 486 (Tex.Civ.App.—Texarkana 1971, writ ref'd n. r. e.).

It is urged that in any event, such failure to eliminate Subsection (2) is harmless error since plaintiff would have been entitled to the maximum compensation rate in any event. I am unable to agree with this conclusion. It is seen that in both *Ford* and *Shannon*, the Supreme Court ordered the case reversed and remanded because of plaintiff's failure to eliminate Subsection (2) of said article. *Shannon* is exactly in point in that it involved a general injury and high earnings under Subsection (3). It is true that the record before us reveals little controversy over the wage rate issue. If there was no controversy, a stipulation should have been entered into by said parties. In the absence of such a stipulation, the burden of establishing his wage rate under the provisions of Article 8309, Section 1, was upon plaintiff. He failed to meet this burden here in that the evidence did not eliminate Subsection (2).

I would reverse and remand.