555 S.W.2d 525 (1977)
TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,
v.
Doris M. ADAMS, Appellee.
No. 8778.
Court of Civil Appeals of Texas, Amarillo.
August 22, 1977.
Rehearing Denied September 19, 1977.
*526 Underwood, Wilson, Sutton, Berry, Stein & Johnson, R. A. Wilson, Amarillo, for appellant.
Neely & Mason, Thomas A. Neely, Wichita Falls, for appellee.
ELLIS, Chief Justice.
In this workmen's compensation case, the trial court rendered judgment based on a jury verdict favorable to Mrs. Doris M. Adams, plaintiff, against Texas Employers' Insurance Association, the defendant insurance carrier, for death benefits resulting from the fatal personal injuries suffered by her son, Tony Michael Adams, in a vehicular accident on a public highway as he was on his way to work for his employer. In its appeal, the insurance carrier contends that under the circumstances of this case the death of Adams was not compensable under the Workmen's Compensation Law of Texas. Also, the defendant-carrier complains of the manner in which the controlling issue was submitted and to the admission of certain testimony asserted to be objectionable and prejudicial. We overrule the carrier's contentions and affirm the judgment of the trial court.
On September 24, 1974, four members of a drilling crew employed by Leonard Hudson Drilling Company, Inc., were riding in *527 an automobile en route from Booker, Texas, to a drilling rig, located about 70 miles away, near Miami, Texas. The driller, Elmer Miller, was the driver of the automobile. The passengers were: David Miller, Elmer Miller's son, a derrick hand; Tom Casey, the chain hand; and Tony Adams, the fireman. It was raining and the chugholes in the road were filled with water. About 14 miles south of Booker the automobile hit the water-filled chugholes in such manner that the driver lost control of the car and hit some trees. Tony Adams and the driller, Elmer Miller, received injuries in the accident from which they died.
This suit originated as an appeal by Mrs. Doris M. Adams, the mother and statutory beneficiary of Tony Adams, deceased, from the action of the Industrial Accident Board in denying her claim for death benefits. In the trial before a jury, the verdict was favorable to Mrs. Adams and the trial court rendered judgment in accordance with the verdict. The insurance carrier has appealed from the judgment on nine points of error.
In its first point of error, the insurer contends that since the fatal injuries suffered by Tony Adams occurred in a one-car vehicular accident on a public highway as he was on his way to work without the showing of any prerequisite under Section 1b of Article 8309, Tex.Rev.Civ.Stat.Ann., his death was not compensable and the court erred in overruling the carrier's motions for instructed verdict and judgment non obstante veredicto. In its second point, the carrier asserts there is no competent evidence to support the jury's finding that the fatal injury was received in the course of Tony Adams' employment by Leonard Hudson Drilling Company.
The pertinent provisions of Sections 1 and 1b of Article 8309 are:
"Section 1.... `(I)njury sustained in the course of employment....'
* * * * * *
(4) ... shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere...."
* * * * * *
"Section 1b. Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment...."
From a review of the evidence we find that the disputed testimony created a fact issue as to whether Hudson furnished transportation as a part of the contract of employment, or transportation was paid for by the employer. Leonard Hudson agreed that he paid $10.00 "per diem," but denied it was paid for driving. As set out below, his statement was controverted by the testimony of Tom Casey, Mrs. Miller, the widow of the deceased driller, as well as by Vaughn, his tool pusher, as set out in a portion of Vaughn's statement attached to the Carrier's Narrative Summary filed with the Industrial Accident Board.
At the time of the accident Hudson Drilling Company was paying the driller, Elmer Miller, the owner and driver of the automobile, the sum of $10.00 "per diem." Tom Casey testified that about a month before the accident there was a change by the company in the manner of handling transportation for the crew. Prior to this change, according to Casey, it had been the practice of the crew members to take turns driving their cars to the rig, and if a crew member did not have transportation another crew member could drive in his place and pay for the driving crew member's gas and oil. Tony Adams did not drive a car in the car pooling arrangement because his car was not in good shape and the driller would drive in his place. The record reflects that *528 the crew was unhappy about the employer's failure to pay driving time. Dobbs Hudson, the drilling superintendent, discussed this matter of driving time with Casey and others and, according to Casey, he agreed that they (the company) "were going to start it up pretty soon." The basis for the discontent was the long drive of approximately 70 miles to the rig and that it was costing them a "lot of money." Casey further testified that this was not the first time the subject of driving time had been discussed, and that they had been talking about it for three months, or more.
After the above mentioned discussion with Dobbs Hudson, a letter regarding the matter in question was sent out by Leonard Hudson about two weeks before the fatal accident. Leonard Hudson was unable to locate the letter that went out, but he testified that he knew the letter identified the $10.00 as a $10.00 per diem to the driller and to the driller only. Mrs. Miller, the widow of the deceased driller, stated that the letter used the specific language, "driving expenses," and that the $10.00 per day was paid as driving expenses. Mrs. Miller also stated that it was the driller's responsibility to pick up the crew members and get the crew to the rig. Leonard Hudson testified that it is part of the driller's job to see that he has all members of the crew on the job, although he denied that the driller was required to transport them. Mrs. Miller stated further that before September 8, 1974, each of the crew members drove the crew every fourth day, and that during the entire period after September 8, 1974, until the date of the accident, her husband, Elmer Miller, drove his car to the rig. The check stubs introduced in evidence disclosed that the driller had received $160.00 for the 16 days between the time of the alleged change in the policy and the date of the accident. Casey stated that he understood that the $10.00 per day was for driving time and that a member of the crew could get the $10.00 per day. Also, Casey stated that subsequent to the policy change, Hudson put the payment for driving time on the check as "per diem" and, after the change, the driller drove every day. Clois Vaughn, who, according to Leonard Hudson, was the tool, pusher and, in such capacity, was the supervisor of drilling operations, made the statement that the driller was paid for driving. This statement concerning driving pay was a portion of Vaughn's statement attached to the Carrier's Narrative Summary filed before the Industrial Accident Board.
Thus, the record demonstrates that the testimony of Hudson, Casey, Mrs. Miller and the statement of the tool pusher created a fact issue concerning the vital question of payment for driving time. Reasonable persons could differ as to the truth of the controlling facts. The weight and credibility of the evidence was for determination by the jury.
We have concluded that the evidence supports the finding that, at the time of the accident, Tony Adams was engaged in the furtherance of the affairs or business of his employer. The evidence discloses that the rig operated 24 hours a day, that the crew generally rode together to work at the rig located approximately 70 miles distant, before as well as after September 8, 1974, and that after the change in policy with respect to the payment of $10.00 per diem, the driller picked up the members of the crew and transported them to the rig. Thus, the evidence sufficiently raised the issue for submission to the jury as to whether the deceased was in the scope and course of his employment within the terms of the instruction submitted in accordance with Article 8309(1b) regarding the matter as to whether transportation was furnished as a part of his contract of employment, or paid for by his employer, and not merely furnished as a gratuitous accommodation to the employee.
In view of the foregoing it is our opinion that the court did not err in overruling the carrier's motions for instructed verdict and judgment non obstante veredicto. This holding, we believe, is in all essential respects, consistent with the holdings in the recent cases of Texas Employers' Insurance Association v. Byrd, 548 S.W.2d 460 (Tex. Civ.App.El Paso 1976, writ pending) and *529 Liberty Mut. Ins. Co. v. Chestnut, 539 S.W.2d 924 (Tex.Civ.App.El Paso 1976, writ pending) dealing with analogous factual situations. Also, see Texas Employers' Insurance Association v. Inge, 146 Tex. 347, 208 S.W.2d 867 (1948). Points 1 and 2 are overruled.
In its third point, the carrier asserts that the jury's finding that the fatal injury was received in the course of Tony Adams' employment by Leonard Hudson Drilling Company is so against the great weight and preponderance of the evidence as to be clearly wrong. It is argued by the carrier that the controlling factor in Inge, Chestnut and Byrd, relied upon by the plaintiff, is that, under the facts of those cases, it was necessary that the employer furnish transportation in order to secure employees. In any event, in the instant case, after Casey and others discussed their dissatisfaction with Dobbs Hudson, the drilling superintendent, regarding the company's failure to pay driving time, a change in policy was effected, i. e., the payment of the extra $10.00 per diem to the driller who drove his car, transported the crew to the remote location of the rig, and which per diem the wife of the driller characterized as compensation for driving time. Also, Casey, a crew member, regarded such compensation as payment for driving time. Further, prior to the change in policy, Leonard Hudson testified that one of his tool pushers told him that if he did not pay driving time, he couldn't get crews. Although Casey testified there were more "hands" than jobs, a change in policy was in fact effected after crew members had expressed dissatisfaction concerning the failure to pay driving time. The change was apparently made for the basic reasons that transportation or mileage was paid in the above cited cases, i. e., remoteness of location of the rig and the importance of the driller having his crew regularly assembled and available for work at the rig.
It is our opinion that under the facts and circumstances the change effectively resulted in the drilling company furnishing transportation as a part of the contract of employment, or the employees' transportation was paid for by the employernot as a mere accommodation. In the light of the foregoing, we have concluded that the jury's finding that the fatal injury was received by Tony Adams during the course of his employment with the drilling company is not so against the great weight and preponderance of the evidence as to be clearly wrong. Point 3 is overruled.
In points 4 and 5, the carrier insists that the court materially erred in including in the instruction to the jury the language "unless the transportation is furnished by the Employer as a part of the contract" and the language "or is paid for by the Employer." Specifically, the carrier insists that if the court agrees with the carrier's no evidence contention as to either phase of the above instruction, it is not possible to determine which of the two above quoted factual theories the jury followed in returning its answer, "we do."
It is our opinion that the foregoing instructions submitted are in statutory form (Art. 8309 1b) and that the matters included in the instruction were adequately raised by the evidence concerning the controlling issue submitted by the court. Since the ultimate issue as raised by the evidence under the pertinent statute was submitted, evidentiary fragments were not required to be submitted. Maryland Casualty Company v. Smithson, 341 S.W.2d 951 (Tex.Civ.App. Dallas 1960, writ ref'd n. r. e.). Also see Janak v. Texas Employers' Insurance Association, 381 S.W.2d 176 (Tex.1964), wherein a similar charge was given. Points 4 and 5 are overruled.
In points 6 and 7, the carrier insists that its specific objection should have been sustained and its requested instruction should have been given wherein it sought to have the jury instructed that the per diem payment could constitute payment for transportation only if made for the purpose of providing transportation for the deceased. However, it is our opinion that the objection and requested instructions pertained to only another phase of the issue submitted. An examination of the instructions *530 submitted and a consideration of the evidence discloses that the ultimate issue and instructions were submitted in accordance with the provisions of Section 1 of Article 8309 and that portion of Section 1b of Article 8309, as raised by the evidence. See Liberty Mutual Insurance Company v. Hopkins, 422 S.W.2d 203 (Tex.Civ.App. Beaumont 1967, writ ref'd n. r. e.). Also see, Jecker v. Western Alliance Insurance Company, 369 S.W.2d 776, 777 (Tex.1963) wherein an analogous charge was submitted. Points 6 and 7 are overruled.
In point 8, the carrier insists that its objections to the court's charge should have been sustained and contends that under the language of the court's charge, payment as a gratuity, as distinguished from payment pursuant to the contract of employment, would form the basis of an affirmative "we do" answer which defeats the purpose of the statute. We disagree. The court's charge as submitted properly followed the statutory language, and a fair interpretation of the language is that if the employer "furnished" transportation as a part of the contract, or if transportation is "paid for" it could not be regarded as a gratuitous accommodation. Also, under the evidence in this case, it is our opinion that no gratuitous accommodation was involved, but rather the evidence demonstrated that the method here employed with respect to the transportation arrangement was clearly a way of effecting a policy paying for or furnishing transportation for employees in connection with the furtherance of the employer's business. See Agricultural Insurance Co. v. Dryden, 398 S.W.2d 745 (Tex.1965). Point 8 is overruled.
In its ninth point, the carrier contends that the trial court materially erred in receiving in evidence over the defendant's hearsay objection that portion of the Carrier's Narrative Summary filed before the Industrial Accident Board, wherein the carrier recites from a statement allegedly attached by Clois Vaughn (the employer's tool pusher) to the effect that the driller was paid for driving. Leonard Hudson testified that he had not paid and does not pay for driving time or driving expenses. The statement by the tool pusher made as a part of the Narrative Summary was properly admitted on the basis that the carrier had taken a position before the Industrial Accident Board inconsistent with its position in the trial of the case, and that such inconsistency constituted an admission against interest and the hearsay objection has no application. See: Charter Oak Fire Insurance Company v. Adams, 488 S.W.2d 548 (Tex.Civ.App.Dallas 1972, writ ref'd n. r. e.); Transamerica Insurance Company v. Beseda, 443 S.W.2d 915 (Tex.Civ.App.Corpus Christi 1969, writ ref'd n. r. e.).
The statement signed by the employer's representative setting out that the employer did pay driving expenses was presented before the Board, while, at trial, Leonard Hudson testified that the employer did not pay driving time or driving expenses. The payment for driving expenses or driving time was the critical question in this death case. It was the statement of the carrier encompassing Vaughn's statement that was introduced. The separate statement of Vaughn himself was not introduced, but only a portion of that recited in the Carrier's Summary. See Texas Employers' Insurance Association v. Weber, 386 S.W.2d 835 (Tex.Civ.App.Austin 1965, writ ref'd n. r. e.). Moreover, even if the statement encompassed in the Carrier's Report should be deemed inadmissible, it has not been established that the admission of such statement brought about an improper verdict. The evidence contained in the statement alleged to be inadmissible was only cumulative of the testimony of Tom Casey and Mrs. Miller with respect to the crucial question. Point 9 is overruled.
For the reasons above stated, the judgment of the trial court is affirmed.